CAMACHO, APELADO, *v.* BALASQUIDE, APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 2ª.

No. 836.—Resuelto en mayo 29, 1913.

APELACIÓN—ERRORES NO PERJUDICIALES.—No producen la revocación de la sentencia aquellos errores que no influyen en la resolución del caso, o son favorables al apelante y no le perjudican. El fin principal en apelación es determinar si la sentencia apelada satisface los fines de la justicia.

ID.—CONCLUSIONES DE LA CORTE SENTENCIADORA—ERRORES SIN IMPORTANCIA.—
No pueden estimarse como insuficientes las conclusiones de hecho y de derecho
del tribunal sentenciador por contener errores sin importancia, como la
expresión errónea de una fecha.

ID.—CONCLUSIONES DE HECHO—PRUEBA CONTRADICTORIA.—Las conclusiones de
hecho del tribunal sentenciador no serán revocadas en apelación cuando la
prueba es contradictoria, a menos que se demuestre que dicha corte actuó
con parcialidad, pasión o prejuicio, o con manifiesto error.

ID.—CONCLUSIONES DE HECHO—SUFICIENCIA DE LAS MISMAS.—Para que puedan
estimarse suficientes las conclusiones de hecho del tribunal sentenciador, es
necesario que sean sostenidas por la prueba y no serán revocadas por in-
suficientes cuando haya alguna prueba competente que las sostenga, ni aun
en el caso de que sean completamente insuficientes, si el error cometido no
perjudica a la parte.

HIJOS NATURALES—PRUEBAS—PARTIDA DE NACIMIENTO—FECHA DEL NACIMIENTO.—
Una partida de nacimiento expedida por un oficial del registro civil cons-
tituye prueba *prima facie* de la fecha del nacimiento de la persona a que se
refiere, y de acuerdo con el artículo 11 de la Ley de Evidencia puede ser
contradicha, si se ve que dicha fecha es errónea, por medio de prueba oral
para probar la verdadera fecha del nacimiento.

ID.—PRUEBAS—PREGUNTAS SUGESTIVAS—JUICIO POR LA CORTE—DISCRECIÓN DEL
TRIBUNAL.—Es permitido bajo la facultad discrecional del tribunal el hacer
preguntas sugestivas a los testigos y cuando el tribunal de derecho y no
el jurado es el juzgador, difícilmente puede considerarse su admisión como
un error perjudicial a la parte.

ID.—PRUEBAS—ADMISIONES HECHAS POR UNA PERSONA FALLECIDA.—El mero
hecho de la muerte de una persona no es bastante por sí solo para que
sirva como fundamento para admitir la declaración de testigos acerca de
admisiones hechas por el difunto.

ID.—PRUEBAS—PARTIDA DE NACIMIENTO DE OTRO HIJO.—Cuando, como en el caso
de autos, el hijo natural que demanda ha nacido en 1908, no constituye error
perjudicial al demandado el denegar la admisión de una partida de naci-
miento para probar que la madre del demandante había tenido otro hijo
en 1904.

14.—PRUEBAS—PRUEBA DE PERITOS—PREGUNTAS HIPOTECAS.—En el ejercicio
de su facultad discrecional tiene el juez sentenciador una gran latitud para
dirigir el interrogatorio de peritos y aun cuando por regla general las
preguntas hipotéticas deben estar fundadas en los hechos ya probados en
el juicio, no es necesario el que cada uno de los hechos haya quedado estable-
cido, ni tampoco el emplear las mismas palabras de los testigos.

ID.—PRUEBAS—REPUTACIÓN DE UN TESTIGO.—Para impugnar la reputación de un
testigo basta con presentar prueba de carácter general, sin que pueda en-
trarse en detalles de actos específicos del testigo.

ID.—PRUEBAS—PRUEBA DE PERITOS—ELIMINACIÓN DE LA MISMA—DISCRECIÓN DEL
TRIBUNAL.—El tribunal en el ejercicio de su facultad discrecional puede
eliminar la declaración de un testigo pericial y su resolución en este sen-
tido no será revocada, a menos que se demuestre que abusó del ejercicio de
dicha facultad.

ID.—PRUEBAS—REPUTACIÓN DE UN TESTIGO—PROSTITUCIÓN.—Para impugnar la
reputación y veracidad de una testigo no puede presentarse prueba tendente
a demostrar actos específicos de su prostitución o inmoralidad, sino que debe

limitarse la prueba a demostrar en términos generales la reputación de la testigo en cuanto a su veracidad en la localidad donde vive.

ID.—PRUEBAS—COLOR DE LA MADRE.—Atendidas las circunstancias de este caso se resolvió, que no era esencial para su resolución el determinar el color de la madre.

ID.—OPINIÓN DEL TRIBUNAL SENTENCIADOR.—De acuerdo con el artículo 227 del Código de Enjuiciamiento Civil enmendado por la ley No. 70 de 1911, es bastante que el juez sentenciador redacte y archive una relación breve de los hechos probados y las razones en apoyo de su resolución, no siendo necesario que redacte una opinión extensa, lo cual queda a su arbitrio.

Los hechos están expresados en la opinión.

Abogados del apelado: *Sres. Francis H. Dexter, Herminio Díaz y Cay. Coll Cuchí.*

Abogados del apelante: *Sres. Juan de Guzmán Benítez y José de Guzmán Benítez.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

En 30 de enero de 1911 fué presentada en este caso una demanda enmendada en la Corte de Distrito de San Juan, en la que el menor Enrique Camacho representado por su madre y defensora, Martina Camacho, entabló una acción contra Antonio Balasquide Gómez, hermano de Ramón Balasquide Gómez, en la que solicitaba que él, dicho Enrique Camacho, fuese declarado hijo natural reconocido de Ramón Balasquide Gómez y su único heredero abintestato.

Funda su acción en los motivos siguientes:

*Primero.* Que Ramón Balasquide Gómez y Martina Camacho, ambos solteros, sostuvieron relaciones amorosas pública y notoriamente por más de dos años.

*Segundo.* Que durante dichas relaciones amorosas y como fruto de ellas fué engendrado y nació el demandante Enrique Camacho, el día 14 de agosto de 1908, sin que al procrearlo o al nacer, ni antes ni después, ni en ninguna ocasión tuviesen sus padres impedimento alguno para casarse.

*Tercero.* Que durante el embarazo de la madre del demandante, el referido Ramón Balasquide Gómez mantuvo a aquélla en una casa cuyo alquiler pagaba puntualmente, así como todos los gastos de subsistencia de la madre.

*Cuarto*. Que al nacer el demandante, Ramón Balasquide Gómez lo reconoció como hijo natural suyo, habiendo confesado y declarado que era su hijo natural a varias personas; que desde la fecha del nacimiento de dicho demandante hasta la muerte de Ramón Balasquide este último atendió a todas las necesidades del hijo y de la madre, pagando sus gastos, comprando vestidos y alimentos para los mismos, y cumpliendo de una manera general e inequívoca como padre de dicho niño, y atendiendo a su cuidado otorgándole los cuidados y atenciones de un padre, habiendo conservado estas relaciones hasta la fecha de la muerte de este último.

*Quinto*. Que el día 13 de marzo de 1910 el expresado padre Ramón Balasquide Gómez falleció en estado de soltería, sin hacer testamento ni dejar herederos legítimos, ascendientes ni descendientes, ni otro descendiente natural que el demandante.

*Sexto*. Que después, el demandado en esta acción Antonio Balasquide Gómez, hermano de Ramón Balasquide Gómez, fué declarado por la Corte de Distrito de San Juan en un procedimiento *ex parte,* único heredero abintestato de este último sin perjuicio de tercero de mejor derecho.

El demandado formuló su contestación en oposición a la demanda, y negó que Martina Camacho fuera soltera o que ella viviera en concubinato con Ramón Balasquide Gómez, pública y notoriamente o que como resultado de dichas relaciones fuera procreado el demandante en esta acción y naciera el día 14 de agosto de 1908; o que Ramón Balasquide tenía o visitaba a Martina Camacho en una casa cuyo alquiler era pagado por él así como sus gastos de subsistencia, y que hubiera hecho admisiones y manifestaciones declarando que el demandante era su hijo natural, atendiendo a sus necesidades y cumpliendo todas las obligaciones de padre para con él; y negó, además, que existiera semejante estado de relaciones entre la demandante y Balasquide hasta la fecha de la muerte de este último. Alegó además, el demandado, en su contestación como materia nueva, que Martina Camacho tenía

distintos hijos habidos en las relaciones ilícitas que había
tenido con varias personas, no siendo ninguno de ellos de
Ramón Balasquide Gómez. Que había estado al servicio
como sirvienta en varias casas y no tenía casa propia, y acos-
tumbraba a salir a las calles de noche y de día para formen-
tar sus relaciones amorosas; que Ramón Balasquide Gómez
había hecho manifestaciones en el sentido de que no tenía
hijos y que, con excepción de su hermano no tenía a nadie a
quien dejar sus bienes cuando se muriera en caso de que esto
ocurriera.

El juicio de este caso tuvo lugar ante el Honorable Charles
E. Foote, juez de distrito, habiendo empezado el día 14 de
julio de 1911 y continuado después en varios días consecu-
tivos. Ambas partes estuvieron representadas por sus res-
pectivos abogados y se presentó prueba por cada una de las
mismas, siendo admitida una parte de dicha prueba para ser
tomada en consideración por la corte, tomándose varias ex-
cepciones a las resoluciones de la corte, excluyendo aquella
parte de la misma cuya admisión se negó así como a algunas
otras órdenes de la corte, todas las cuales aparecen en la rela-
ción del caso, que forma parte de los autos en este pleito, y
que está contenida en ellos. El día 9 de agosto de 1911 la
corte dictó su sentencia en este caso, declarando que los
hechos y la ley estaban a favor del demandante y en contra
del demandado, y declarando, además, que el demandante,
Enrique Camacho, es hijo natural reconocido y único here-
dero universal de Ramón Balasquide Gómez, y tenido por
éste en sus relaciones con Martina Camacho, y adjudicando
al expresado Enrique Camacho todos los derechos y obliga-
ciones correspondientes a su condición de hijo natural reco-
nocido y heredero universal de Ramón Balasquide Gómez, e
imponiendo, además, las costas al demandado. Se notificó
esta sentencia debidamente al demandado el día 15 de agosto
de 1911 de acuerdo con la ley.

Celebrado el juicio la corte preparó sus conclusiones de
hecho y de derecho en este caso, haciendo una relación de

todas las cuestiones que consideró habían sido probadas, y
expresando las conclusiones de derecho por virtud de las
cuales el demandante, de acuerdo con el Código Civil de 1902
y la jurisprudencia de ésta Isla, fué declarado hijo natural
reconocido de Ramón Balasquide Gómez y único heredero de
sus bienes.  El demandado interpuso recurso de apelación
contra la sentencia que contra él se dictó, por consejo de su
abogado, habiendo remitido a esta Corte Suprema la trans-
cripción de los autos a su debido tiempo, la que ha sido debi-
damente certificada por los respectivos abogados de las
partes.

Las conclusiones de hecho y de derecho a que llegó la corte
sentenciadora, son sustancialmente las siguientes:

### CONCLUSIONES DE HECHO.

1ª. Que Ramón Balasquide Gómez era blanco, mayor de
edad, soltero, y vecino de San Juan; y que Martina Camacho
es blanca, mayor de edad, soltera, de oficios domésticos y tam-
bién vecina de San Juan.

2ª. Que en la noche del 14 de agosto de 1908, Martina
Camacho dió a luz un niño de color blanco, al que se le puso
el nombre de Enrique, cuyo niño es el demandante en esta
acción.

3ª. Que durante un año o más al nacimiento del niño Enri-
que, Ramón Balasquide Gómez sostenía relaciones amorosas
con Martina Camacho, y que estas relaciones empezaron
mientras se hallaba Martina Camacho viviendo como sir-
vienta en la casa de dicho Ramón Balasquide Gómez.

4ª. Que mientras Ramón Balasquide Gómez sostenía tales
relaciones amorosas con Martina Camacho, viviendo ella en
la casa de Balasquide como sirvienta, él tuvo actos carnales
con ella en varias ocasiones resultando ella embarazada de
tales actos.

5ª. Que Ramón Balasquide Gómez alquiló una casa en San-
turce, San Juan, durante el embarazo de Martina Camacho,
donde la llevó a vivir.  Que durante todo el estado de emba-

razo de ella, Balasquide pagó el alquiler de la casa y todos los demás gastos de Martina Camacho, y durante todo este tiempo visitaba la casa en varias ocasiones, paseaba también con ella por sitios concurridos de esta ciudad, la trataba como su concubina, habiendo hecho, además, manifestaciones de que no tenía sospecha alguna de que le fuera infiel, expresando, además, que tenía confianza en ella y le causaba alegría ver realizado su deseo de tener un hijo con ella.

6ª. Que Ramón Balasquide Gómez se encontraba en la casa de Martina Camacho cuando ella dió a luz al niño Enrique e inmediatamente después del alumbramiento él lo reconoció como hijo suyo.

7ª. Que con posterioridad a dicho alumbramiento de Martina Camacho, Ramón Balasquide Gómez pagó sus honorarios a la comadrona que la asistió durante el parto y siguió visitándola; que también pagó todos los gastos necesarios para su subsistencia y la del niño, y dijo a amigos suyos que había tenido un hijo; y que consideró a Martina Camacho como su concubina y al niño Enrique como hijo suyo hasta la fecha de su muerte ocurrida el día 13 de marzo de 1910.

8ª. Que al tiempo de la concepción y nacimiento del niño Enrique, entre Ramón Balasquide Gómez y Martina Camacho no existía ningún impedimento para contraer matrimonio.

9ª. Que Ramón Balasquide Gómez falleció el día 13 de marzo de 1910 sin otorgar testamento o dejar ascendientes ni descendientes legítimos ni más descendientes naturales que el demandante.

10ª. Que todas las alegaciones de la demanda son verdaderas y que no lo son las negaciones y alegaciones de la contestación formulada por el demandado.

### CONCLUSIONES DE DERECHO.

1ª. Que con arreglo a las prescripciones del Código Civil tal como fué aprobado en marzo de 1902, el demandante Enrique Camacho es hijo natural reconocido de Ramón Balasquide Gómez.

2ª. Que Enrique o sea el demandante en este caso, es el único heredero de Ramón Balasquide Gómez, en su calidad de hijo natural reconocido del mismo, siendo de aplicación el párrafo 1º. del artículo 913 del Código Civil.

3ª. Que el demandante tiene derecho también a que se dicte una sentencia a su favor por las costas que sean aprobadas por la corte.

El apelante por medio de su abogado presenta en su alegato como fundamento de esta apelación una relación de errores de conformidad con nuestras reglas, pero dividiéndolos según su mejor criterio en errores de hecho y errores de derecho. Con el fin de alcanzar la mayor facilidad en la discusión de las cuestiones presentadas por el abogado del apelante, haremos una combinación más adecuada de estos errores y los enumeraremos consecutivamente desde el 1 al 22, sin que por esto hagamos cambio en su parte sustancial:

1. Que la corte inferior admitió prueba testifical tendente a demostrar la inscripción del nacimiento del niño Enrique Camacho en el registro civil, no obstante el hecho de existir la certificación del acta de dicho nacimiento expedida por el funcionario competente y que fué presentada como evidencia en el mismo juicio; habiendo el demandado tomado excepción a esta orden de la corte.

2. Que la corte admitió prueba testifical tendente a desvirtuar la certeza de la fecha del nacimiento del demandante que resulta del acta certificada del nacimiento de dicho demandante.

3. Que la corte inferior admitió en el juicio como prueba algunas preguntas sugestivas del interrogatorio directo del demandante a sus testigos, todas las cuales constan y están especificadas en la exposición del caso; a cuya admisión opuso excepción el demandado.

4. Que la corte sentenciadora admitió como evidencia dos documentos privados sobre fianzas que fueron firmados por Elena Artuz y Ramón Balasquide, sin que hubiera sido identificada debidamente la autenticidad de la firma de Balas-

quide por haber quedado desvirtuada la veracidad de Elena Artuz en el mismo juicio, a cuya admisión de prueba por la corte el demandado tomó excepción.

5. Que la corte inferior se negó a admitir como evidencia las contestaciones a las diferentes preguntas hechas por el demandado a varios testigos, entre ellos Manuel Quevedo Báez y Rafael Diez de Andino, todas las cuales tendían a hacer constar ciertas manifestaciones hechas por Ramón Balasquide, a pesar de haberse alegado por el demandado que Ramón Balasquide había fallecido; habiendo el demandado opuesto excepción a esta resolución de la corte.

6. Que la corte inferior se negó a admitir en evidencia una certificación expedida por el debido funcionario del Registro Civil de Toa Alta conteniendo copia literal del acta de nacimiento de un niño que tuvo Martina Camacho en el año 1904, cuya certificación fué presentada por el demandado para probar una alegación que era esencial a esta cuestión y que consta en la contestación formulada a la demanda, a cuya resolución el demandado formuló excepción.

7. Que la corte sentenciadora permitió que el Dr. B. K. Ashford, mientras se encontraba prestando declaración como testigo pericial, hiciera referencia a algunos hechos cuya existencia y certeza no habían sido probadas en el juicio; a cuya resolución de la corte el demandado tomó excepción.

8. Que la corte sentenciadora admitió como prueba de la conducta general de Martina Camacho, una contestación dada en términos generales por la testigo del demandante Inés Artuz, habiendo opuesto excepción el demandado.

9. Que la corte inferior no permitió que se recibiese declaración al testigo perito Dr. Eliseo Font y Guillot, presentado por el demandado, como prueba de *rebuttal* para refutar la declaración hecha por un testigo pericial del demandante, sobre materias referentes a su declaración, habiendo opuesto excepción el demandado.

10. Que la corte inferior se negó a admitir como evidencia una certificación expedida por el Secretario Municipal de

San Juan, después de haber examinado el libro de hojas clínicas del Hospital Especial de Mujeres que mostraba que Francisca Martínez Ubaldo había sido asistida en dicho hospital
de chancroides, y que hacía dos años que se hallaba dedicada
a la prostitución, cuya certificación fué presentada por el
demandado para impugnar la veracidad de dicha testigo del
demandante, habiendo tomado excepción el demandado.

11. La corte declaró que Enrique Camacho nació el día
14 de agosto de 1908 no obstante el hecho de que la partida
de nacimiento demuestra que dicho niño nació el día 25 de
septiembre de 1909.

12. La corte declaró que durante un año o más con anterioridad al día 14 de agosto de 1908 que es la fecha fijada
por la corte con respecto al nacimiento del niño, Ramón Balasquide y Martina Camacho sostenían relaciones amorosas que
resultaron en el nacimiento de Enrique Camacho.

13. La corte declaró que Balasquide trataba a Martina
Camacho como su concubina e hizo manifestaciones en el sentido de que no tenía sospechas de ninguna clase respecto a
su fidelidad para con él y que estaba contento al ver que ella
había realizado sus deseos de tener un niño.

14. La corte declaró en su décima conclusión que todas las
alegaciones contenidas en la demanda son verdaderas y las
negaciones y alegaciones contenidas en la contestación que
fué presentada por el demandado no son ciertas.

15. La corte inferior expresa en su conclusión número 1
que Martina Camacho es blanca.

16. La corte en la conclusión de hecho número 2 declara
que en la noche del día 14 de agosto de 1908, Martina Camacho dió a luz un niño que es el demandante en esta acción.

17. La corte expresa en su conclusión número 3 que durante un año o más y con anterioridad al nacimiento del niño
Enrique, Ramón Balasquide Gómez sostenía relaciones amorosas con Martina Camacho, y que estas relaciones empezaron mientras se hallaba Martina Camacho viviendo como
sirvienta de la casa de dicho Ramón Balasquide Gómez, de

modo que según esta declaración, las relaciones empezaron en 14 de agosto de 1907, o antes de esa fecha.

18. La corte inferior declara en su conclusión número 4, que durante dichas relaciones amorosas, y mientras vivía Martina Camacho en la casa de Balasquide como sirvienta, tuvieron ellos actos carnales en varias ocasiones, resultando ella embarazada de tales actos.

19. En la conclusión número 5 los siguientes hechos han sido declarados por la corte, a saber:

"(*a*) Que Ramón Balasquide alquiló una casa para Martina Camacho durante su embarazo, y fué trasladada a ella en Santurce.

"(*b*) Que durante dicho embarazo Balasquide pagaba los alquileres de la casa y todos los demás gastos.

"(*c*) Que visitaba la casa en varias ocasiones, salía a pasear con ella por los sitios públicos de la ciudad y la trataba como su concubina.

"(*d*) Que hizo algunas manifestaciones que mostraban que no tenía sospechas en cuanto a su fidelidad, y que tenía confianza en ella y se alegraba que tuviera un niño."

20. En la sexta conclusión de la sentencia se afirma que Ramón Balasquide Gómez se encontraba presente en la casa de Martina Camacho cuando ella dió a luz al demandante y que inmediatamente lo reconoció como hijo suyo.

21. Se ha alegado en la séptima conclusión de hecho de la sentencia que Balasquide pagó los gastos de comadrona y continuó sufragando los demás gastos que se le ocasionaron a Martina Camacho, su concubina, atendiendo, además, a los de su hijo, el demandante, hasta la fecha de la muerte del primero.

22. Se alega en la sentencia en la décima conclusión, que las alegaciones contenidas en la contestación no son verdaderas y no ofrecen ninguna razón en apoyo de dicha conclusión, y por tanto infringen el artículo 227 del Código de Enjuiciamiento Civil, enmendado en 1911, en materia de pruebas.

La apelación se funda, como así lo afirma la parte apelante en su alegato escrito, en los errores de derecho come-

tidos en el juicio a los que opuso excepción el demandado, en los errores de derecho cometidos en la sentencia, y en que la prueba es insuficiente para sostener la sentencia y ha debido desestimarse la demanda.

Los varios errores que han sido alegados serán examinados y tomados en consideración por series, hasta tanto sea conveniente hacerlo en el mismo orden que ha seguido el apelante, quien en cuanto a este particular se presume que conoce el mejor método de presentar su caso, con el fin de obtener la revocación de la sentencia que contra él fué dictada.

No es cada error de hecho o de derecho en el cual haya podido incurrir la corte sentenciadora durante el juicio, lo que justifica la revocación de la sentencia dictada. Aquellos que no influyen en la resolución del caso o que fueron favorables para el apelante o inmateriales pueden perfectamente no ser tomados en consideración en la apelación. Nuestro propósito es llegar al conocimiento de los hechos esenciales del caso y de los principios correctos de ley aplicables a los mismos, para determinar de este modo si en la sentencia que ha sido sometida a nuestra consideración para ser revisada se ha impartido o nó justicia sustancial a las partes, y de ser así debe confirmarse; de lo contrario se impone su revocación.

Las conclusiones de hecho y de derecho de la corte sentenciadora no pueden ser consideradas como insuficientes en la apelación porque se hayan cometido simples errores que fueron inadvertidos al exponer los hechos o en la exposición de las conclusiones de derecho, así como por ejemplo el mencionar una fecha errónea cuando de ello no resulta perjuicio alguno. *Pearsall* v. *Henry,* 153 Cal., 314; *Field* v. *Burr,* 129 Cal., 44; *Thomas* v. *Jameson,* 77 Cal., 91; 38 Cyc., 1975.

Hasta ahora hemos declarado que las conclusiones de hecho según han sido preparadas por la corte sentenciadora, por lo general no serán modificadas si resultan estar de acuerdo con la exposición del caso contenida en los autos, o en caso de que la prueba sea contradictoria, a menos que se

demuestre que haya habido parcialidad, prejuicio o pasión o que aparezca que se ha cometido algún error manifiesto. Cuando la prueba es contradictoria y los autos no demuestran que cualquiera de los testigos no fué digno de crédito, las conclusiones de la corte inferior sobre ese punto ordinariamente deben aceptarse por la corte de apelación como correctas. *Lowande* v. *García,* 12 D. P. R., 302.

Para que las conclusiones de hecho sean suficientes es un requisito esencial que estén sostenidas por la prueba, pero como cuestión de derecho, cuando existe alguna prueba competente en apoyo de las mismas, las cortes de la mayoría de las jurisdicciones no revisarán o modificarán dichas conclusiones por el fundamento de que son insuficientes, y ni siquiera en el caso de existir una insuficiencia absoluta en las conclusiones no procedería la revocación si el error no es perjudicial. *Southern California Ry. Co.* v. *Slauson,* 138 Cal., 342; *Ambrose* v. *Drew,* 139 Cal., 665; *Barry* v. *Beamer,* 96 Pac. Rep., 373; 3 Cyc., 358 *et seq.* El objeto de estas observaciones ha sido el de aplicarlas a todos estos señalamientos de error que ahora vamos a discutir separadamente.

(*a*) El primero, segundo, undécimo, y décimosexto señalamientos de error pueden discutirse conjuntamente, pues en ellos se trata de la misma cuestión. En el primero y segundo señalamientos se impugna la admisión de prueba testifical tendente a contradecir las manifestaciones contenidas en la inscripción de nacimiento del demandante con respecto a la fecha en que dicho nacimiento tuvo lugar. El undécimo y décimo sexto señalamientos expresan la conclusión a que llegó la corte de que el demandante nació en 14 agosto de 1908, mientras que de la certificación aparece que nació en 25 de septiembre de 1909. Se alega que esta última fecha es la correcta. El apelante ha alegado que la certificación del nacimiento del demandante debe admitirse como documento público incontrovertible y que una conclusión de hecho contraria a su contenido es necesariamente incorrecta. Según nuestra opinión la corte sentenciadora pudo considerar otra prueba con res-

pecto a este punto como lo hizo en el juicio, fijando la fecha del nacimiento del demandante de conformidad con la prueba que le ofreció más garantía y que fué sometida a su consideración.

Estos señalamientos de error según han sido expresados hicieron referencia a la admisión de prueba testifical tendente a demostrar la inscripción del nacimiento del niño Enrique Camacho en el registro civil, y a impugnar la exactitud de la fecha del nacimiento del demandante, como aparece de dicha certificación. De conformidad con nuestra Ley de Evidencia dicha prueba es admisible. Además, puede decirse que no es esencial la cuestión relativa a la exactitud de la fecha del nacimiento del demandante y que por tanto estos señalamientos no están bien fundados, y que cualesquiera errores en que la corte haya podido incurrir en relación a los mismos no son esenciales. Debe tenerse presente que Martina Camacho declaró bajo juramento, que cuando inscribió el nacimiento del demandante el día 2 de noviembre de 1909 el niño tenía un año y seis meses de edad; y, además, que ella declaró que el niño no nació en 25 de septiembre de 1909 como expresaba la certificación de inscripción del registro civil, debiendo además tenerse en cuenta que Elena Artuz fué llamada como testigo para probar que Martina Camacho dió a luz al demandante el día 14 de agosto de 1908 y que la referida testigo confirmó la manifestación hecha por la madre del demandante con respecto al particular, y que la fecha del nacimiento también quedó determinada por la comadrona, que asistió al parto. Tomando toda esta prueba en consideración, la corte sentenciadora, en ejercicio de sus facultades y después de considerar la misma en forma adecuada declaró que el niño había nacido en 14 de agosto de 1908. Por consiguiente no podemos expresar que se cometiera ningún error al fijar esta fecha.

Con respecto al artículo 320 del Código Civil y a la debida interpretación que ha de dársele, puede dicho artículo ser considerado como ley elemental y que el principio legal conte-

nido en el mismo ha sido modificado por la Ley de Evidencia. La certificación de inscripción hecha en el registro civil relativa al nacimiento del niño no puede ser considerada como un documento incontrovertible. Es evidente que constituye prueba de su contenido, pero esta prueba es solamente *prima facie.* Nuestra Ley de Evidencia declara en su artículo 71, que los asientos en libros o registros públicos u oficiales practicados en el desempeño de su cargo por un funcionario público u otra persona en el cumplimiento de su obligación constituyen evidencia *prima facie* de los hechos consignados en estos asientos, y el artículo 11 de la misma Ley de Evidencia nos dice lo que constituye evidencia *prima facie,* y la define expresando que es la que basta para probar un hecho determinado, mientras no se contradiga o desvirtúe con otra evidencia, y presenta como ejemplo, que el certificado de un registrador es evidencia *prima facie* de su inscripción, pero puede desecharse más tarde probando que no existe tal inscripción. Por tanto, este certificado hecho por el debido funcionario que demuestra la inscripción en el registro civil del nacimiento del niño es solamente *prima facie,* y no es un documento incontrovertible, y siendo esto así el demandante pudo correctamente ofrecer prueba testifical para probar que el contenido del mismo no era correcto. Esta proposición está sostenida en el tomo 2 de Wigmore sobre Evidencia, artículos 1335 y 1336, y Jones en Evidencia, artículo 511, y en las autoridades citadas por ambos tratadistas.

(*b*) En el tercer señalamiento de error se formula la objeción de que algunas preguntas sugestivas hechas en el interrogatorio directo del demandante a sus testigos, fueron permitidas por la corte que se hicieran, no obstante la objeción del demandado. En ciertas circunstancias se permite hacer preguntas sugestivas a los testigos, y el hecho relativo a si deben o nó hacerse durante el juicio es una cuestión que descansa principalmente en la discreción del juez sentenciador. De la admisión de tales preguntas hay menos probabilidad de que pueda ocasionarse algún perjuicio a alguna de las par-

tes, en un caso que se esté celebrando ante una corte, que si el mismo estuviera sometido a un jurado, porque la corte aun después de conocer la contestación a la pregunta que es objeto de impugnación puede prontamente no tomarla en consideración, si resulta que ha sido admitida indebidamente. En Puerto Rico todos los casos civiles se celebran ante la corte sin jurado. No se ha probado que las preguntas sugestivas que han sido impugnadas perjudicaran al caso del apelante; por consiguiente, no es necesario que tomemos en consideración este señalamiento de error.

(c) El cuarto error en que insiste el apelante se refiere a la admisión de dos documentos privados que se alega que son fianzas suscritas por Elena Artuz y Ramón Balasquide y se funda en que la firma de Balasquide no se identificó debidamente. El juez la estimó identificada por la declaración de Elena Artuz y no se nos muestra causa bastante para rechazar su apreciación.

(d) El quinto señalamiento de error hace referencia a no haber sido admitidas las declaraciones de los testigos Quevedo Báez y Diez de Andino, y que fueron presentados por el demandado, habiéndoseles hecho varias preguntas a los mismos para probar ciertas manifestaciones que les hizo Ramón Balasquide. El apelante alega que esta prueba era admisible porque Balasquide ya había fallecido. Algo más que el hecho relativo a la muerte del declarante es necesario para poder establecer el fundamento acerca de la admisión de manifestaciones que no han sido juradas, en un juicio como el presente. Tal fundamento no quedó establecido y la prueba fué debidamente rechazada.

(e) El sexto error señalado que se alega fué cometido por la corte inferior se refiere a no haber sido admitida como prueba una certificación del nacimiento que se dice fué expedida por funcionario competente, y cuyo contenido mostraba que Martina Camacho había tenido un niño en Toa Alta el año 1904. Dada la fecha del expresado documento, la negativa de su admisión no perjudicaba los derechos del demandado.

(*f*) El séptimo señalamiento de error se refiere a la de-
claración pericial del testigo Dr. B. K. Ashford, en el que se
alega que se le permitió hacer referencia al emitir su opinión
pericial, a algunos hechos cuya existencia y certeza no habían
quedado debidamente establecidos en el juicio. La pregunta
hecha al testigo pericial, Comandante B. K. Ashford, y la con-
testación a dicha pregunta, según el pliego de excepciones fué
la siguiente:

P. Si un individuo que camina solo por la calle, que acude
a diversiones, que atiende a sus negocios, que es exagerado
en el cumplimiento de su deber, que al mismo tiempo se le
nota un cambio de pronto en su manera de proceder o en su
carácter habitual, entregándose al alcohol, ¿en qué período
de la parálisis estaría ese individuo?

R. En el primer período de su enfermedad.

La objeción formulada a esta pregunta fué la de que la
existencia y realidad de los hechos expresados en la pre-
gunta no habían sido probados en el juicio. La corte sen-
tenciadora tiene gran liberalidad en los interrogatorios que
se hacen a los peritos. 17 Cyc., 244, *et seq.*, y notas.

Esto es especialmente cierto en el juicio de un caso ante
la corte sin jurado, como se celebran todos los juicios de
casos civiles en Puerto Rico. Aunque es una regla general
que las preguntas hipotéticas deben hacerse fundadas en
hechos que descansen en una prueba tal que lógicamente
pueda decirse que establecen dichos hechos, no es necesario
sin embargo, que todos los hechos se prueben claramente o
que se siga al pie de la letra la declaración de los testigos.
*Int. R. R. Co.* v. *Mills* (Tex. Civ. App.), 78 S. W. Rep., 11;
*Quinn* v. *Higgins,* 63 Wis., 664; 24 N. W. Rep., 489; 53 Am.
Rep., 305; *Oliver* v. *North End St. Ry. Co.,* 170 Mass., 222.

(*g*) El octavo señalamiento de error hace referencia a la
prueba, que demuestra la reputación general de Martina Ca-
macho y se alega que la contestación de la testigo Inés Artuz
prestada en términos generales, con relación a la misma, fué
indebidamente admitida como prueba. Cuando se ataca la

reputación de un testigo o de cualquiera otra persona procede la presentación de prueba en relación a la misma en términos generales y no deben probarse actos específicos que se reflejen en el carácter de la persona tachada. Por tanto la práctica seguida por la corte y que ha sido impugnada es precisamente la procedente, de conformidad con todas las autoridades. 40 Cyc., 2543, 2572; *State* v. *Tarleton,* 22 S. E., 495; 118 N. W. Rep., 706.

(*h*) El noveno señalamiento de error se refiere también a prueba pericial y se señala como error el no haber permitido la corte sentenciadora la declaración ofrecida por el demandado, del testigo Dr. Eliseo Font y Guillot. Este testigo fué presentado para contradecir manifestaciones hechas por el testigo pericial presentado por el demandante. La corte creyó conveniente excluir dichas declaraciones y dicha exclusión era una cuestión que estaba dentro de la discreción legal de la corte, y no será por tanto revisada a menos que se demuestre que al ejercitarla se haya cometido algún abuso. 17 Cyc., 28. *Powers* v. *McKenzie,* 90 Tenn., 167, 182; 16 S. W. Rep., 599; *Fraser* v. *Jennison,* 42 Mich., 206; 3 N. W. Rep., 882.

(*i*) El décimo señalamiento de error trata de la cuestión referente a la negativa de la corte sentenciadora a admitir como prueba una certificación expedida por el Secretario Municipal de San Juan, tomada del libro de hojas clínicas del Hospital Especial de Mujeres, creditiva de que Francisca Martínez Ubaldo había sido asistida en dicho hospital y era una prostituta, a cuya abominable profesión se encontraba dedicada desde hacía unos dos años. Esta certificación fué presentada con el fin de impugnar la honradez y veracidad de dicha Francisca como testigo. La prueba de los actos específicos no es admisible con tal objeto y la reputación de un testigo de castidad o lujuria, no puede ser presentada para impugnar su declaración. La reputación de un testigo cuya declaración se impugna, del concepto en que se le tiene en cuanto a su veracidad en la vecindad en que vive,

es la prueba adecuada cuando se impugna dicha veracidad, y no la de su reputación por otros conceptos. Aún una mujer lujuriosa puede ser fidedigna, y por tanto el hecho que trató de probarse era enteramente inmaterial e impertinente.

(*j*) El duodécimo y décimo tercero señalamientos de error que han sido clasificados con relación a los errores de ley, en realidad se refieren a cuestiones de hecho y en ellos se objetan las conclusiones del juez sentenciador, de que Balasquide había tratado a la madre del demandante como su concubina, y había hecho manifestaciones en el sentido de que no tenía sospechas de ninguna clase de su fidelidad y expresó su alegría de que había tenido un hijo con ella; además, que existieron relaciones amorosas entre el padre y la madre del demandante. Estas conclusiones de la corte se fundaron en cierta prueba que fué presentada en el juicio y que consta en la exposición del caso, y no podemos considerarlas como erróneas, aun cuando puede encontrarse prueba contrádictoria en los autos.

(*k*) El décimo quinto señalamiento de error alega simplemente que la corte inferior cometió error al resolver que Martina Camacho era blanca. Ella es la madre del niño y lo representa en este pleito. No es esencial para la debida resolución de este caso investigar acerca de su color. La Diosa de la Justicia no distingue de colores. No creemos que fué la intención del juez sentenciador declarar como cuestión de hecho, que Martina Camacho era de pura raza caucásica, puesto que no es esencial que fuera o nó de tal color. Por consiguiente este señalamiento puede ser eliminado de nuestra consideración sin que sea necesario discutirlo con mayor extensión.

(*l*) En el décimo séptimo y décimo octavo señalamientos así como en el duodécimo, el apelante sostiene que se cometieron errores en las conclusiones a que llegó la corte al establecer el hecho de las relaciones amorosas a que se refieren las alegaciones, que se dice comenzaron un año o más con anterioridad al nacimiento del niño y mientras la madre del deman-

dante vivía como sirvienta en la casa de Ramón Balasquide, fijando por tanto la fecha del comienzo de dichas relaciones, la del 14 de agosto de 1907 o antes de la misma. La prueba con respecto a estas fechas y a las relaciones que existían entre las partes que se alega eran los padres del demandante es algo contradictoria; y se ha resuelto frecuentemente por este tribunal, de conformidad con las resoluciones de cortes de apelación de los Estados Unidos, que cuando la prueba es contradictoria las conclusiones a que ha llegado la corte sentenciadora en cuanto a la misma serán respetadas por el tribunal de apelación a menos que se demuestre que ha habido parcialidad, pasión o prejuicio o algún error manifiesto. Tomando en consideración el hecho de que el juez sentenciador oye y ve a los testigos, de los que solicita que aclaren cualquier punto dudoso que aparezca de la prueba, y observa la actitud de los mismos mientras se encuentran prestando declaración, dicho juez está en mejores condiciones para llegar a una conclusión razonable con respecto a la veracidad de los diferentes testigos, y de la exactitud de cualquiera o todas las declaraciones prestadas por los mismos, estando guiado por un sano juicio y una conciencia honrada, que lo que pudiera estarlo esta corte de una mera lectura de los autos. *Río* v. *Vázquez,* 17 D. P. R., 672; *Márquez* v. *New York & Porto Rico Steamship Co.,* 17 D. P. R., 546; y *H. F. Besosa & Co.* v. *Cadierno López & Co.,* 17 D. P. R., 137. No existe nada en estos autos en que pueda fundarse un argumento, alegando que la corte sentenciadora estuviera influída en sus conclusiones de hecho por algún motivo indebido, o que algún error manifiesto aparece en ellas, según los hechos que han sido presentados ante este tribunal en la exposición que ha sido certificada.

(*m*) Se hace objeción en el décimo noveno señalamiento, a las conclusiones de la corte sentenciadora, según en el mismo se expresa, que la corte declaró como probados cuatro actos diferentes por parte de Ramón Balasquide, que se enumeran en dicho señalamiento, tendentes a demostrar el reco-

nocimiento que hizo del demandante como hijo natural suyo. Indudablemente que existe alguna prueba en la exposición del caso en apoyo de estas conclusiones a que llegó la corte sentenciadora; y no habiéndose formulado una objeción válida a las mismas, que muestre alguna incorrección como hasta ahora se ha dicho, debemos aceptarlas como correctas.

(*n*) El vigésimo señalamiento de error es virtualmente una continuación del décimo séptimo, teniendo como tiene relación con el hecho referente a haber estado presente Balasquide en la casa de Martina Camacho en la fecha que nació su hijo; y las mismas observaciones que se hicieron en cuanto a dicho señalamiento son de aplicación a éste. Podemos, además, expresar, que el punto esencial en discusión según las alegaciones de este caso, se refiere a si Ramón Balasquide y Martina Camacho sostuvieron o nó con anterioridad a la fecha del nacimiento de Enrique Camacho, relaciones amorosas durante un tiempo suficiente que permitiera la concepción, gestación y nacimiento del niño. El juez sentenciador en sus conclusiones declara que dichas relaciones existieron por un año o más con anterioridad al nacimiento del demandante y que fué durante este período que la concepción y gestación del niño tuvo lugar. Para que el apelante pueda mostrar que cualquier error que haya podido cometer la corte inferior con respecto a estas cuestiones es esencial, debe aparecer prueba tendente a mostrar como cuestión de hecho, que Balasquide y Martina Camacho no tuvieron tales relaciones íntimas y contacto carnal por tiempo suficientemente largo y en la época adecuada, que diera por resultado la concepción, gestación y nacimiento del niño Enrique Camacho. Según nuestro criterio el apelante ha dejado de probar tal cosa, como puede verse de los autos en este caso. Por consiguiente la conclusión impugnada debe aceptarse como correcta.

(*o*) El vigésimo primer señalamiento de error cita como error la conclusión a que llegó el juez sentenciador, de que Balasquide pagó los honorarios a la comadrona, que asistió

a la madre del demandante durante el nacimiento del mismo
y otros gastos en que tuvo que incurrir y que atendió a los
cuidados del demandante mientras vivió dicho Balasquide.
Los autos ciertamente contienen prueba en apoyo de tal con-
clusión y creemos que estos hechos han quedado estableci-
dos por preponderancia de la prueba.   Por consiguiente, no
podemos estar conformes con este señalamiento de error.

(*p*)  En el vigésimo segundo y décimo cuarto señalamientos
se alega, que la corte sentenciadora simplemente declaró que
las alegaciones contenidas en la demanda son ciertas y que
las expresadas en la contestación no lo son, sin mostrar al-
guna razón en apoyo de dicha conclusión, infringiendo por
tanto el artículo 227 del Código de Enjuiciamiento Civil según
ha sido enmendado por la ley que fué aprobada en el año
1911.   Examinemos estos estatutos.   El artículo 227 del Có-
digo de Enjuiciamiento Civil según ha quedado enmendado
por la Ley de 9 de marzo de 1911 (Ley número 70), dispone
que en el juicio definitivo de cualquier caso en una corte de
distrito, el juez de la misma hará y archivará una relación
breve del caso, exponiendo los hechos según éstos resulten
ante él y dando las razones en que funde su decisión.   Leyes
de la sesión de 1911, página 238.   Así lo hizo el juez senten-
ciador en el presente caso, según aparece de los autos que
han sido presentados en este tribunal.   El juez sentenciador
no está obligado a emitir una opinión con profusión de deta-
lles.   Las simples conclusiones de hecho y de derecho como
las que ha establecido el juez de la corte inferior en este
caso es todo lo que es absolutamente necesario.   Si la corte
sentenciadora creyera conveniente redactar una opinión ex-
tensa ésta puede ser de utilidad a la corte de apelación y el
hecho de que proceda o nó de este modo es una cuestión gene-
ralmente discrecional en ella, no habiendo ningún precepto
de ley en sentido contrario.

(*q*)  Tomando en consideración el hecho de que el juez sen-
tenciador declaró en sus conclusiones fundadas en la prueba
que fué presentada en el juicio, no solamente que el deman-

dante nació durante la época en que Martina Camacho y Ramón Balasquide sostuvieron relaciones amorosas entre sí, sino también que Balasquide había declarado tanto pública como privadamente que el niño era suyo, del que había hablado como hijo suyo en conversaciones, y que atendió a su sostenimiento así como al de su madre mientras esta última vivió en concubinato con él, la prueba del reconocimiento de dicho niño es amplia y los requisitos exigidos por el código han sido cumplidos enteramente en cuanto a ese particular, y la corte estuvo justificada al fundar su sentencia en los hechos que así declaró probados y en la ley tal como existe.

(*r*) Creyendo como creemos que la sentencia dictada por la corte sentenciadora en este caso se fundó en la prueba que fué debidamente admitida durante el juicio, y en la ley que regula tales casos en Puerto Rico, dicha sentencia debe ser confirmada en todas sus partes.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.