ABINTESTATO DE FÉLIX MATOS ASENCIO, EX PARTE; ADELINA ASENCIO PAGÁN, peticionaria y apelante.

Núm. 8881.—*Sometido:* Mayo 1, 1944. *Resuelto:* Julio 24, 1944.

*José Sabater,* abogado de la apelante; *Enrique Báez García,* abogado de Mercedes Díaz.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

El día 22 de septiembre de 1942, la apelante, doña Adelina Asencio Pagán, radicó una petición ante la Corte de Distrito de Mayagüez solicitando el nombramiento de un administrador judicial para los bienes dejados al fallecimiento de su hijo Félix Matos Asencio. Alegó que dichos bienes estaban en poder de Mercedes Díaz, quien, según la peticionaria, no tiene derecho alguno a participar en los mismos por no haber sido nunca casada con Félix Matos Asencio. Mercedes Díaz compareció y alegó ser la viuda del causante, por lo que la corte inferior decretó la administración judicial solicitada y designó a dicha Mercedes Díaz administradora y ésta aceptó y juró el cargo, prestó fianza, que fué aprobada, y radicó proyecto de inventario que fué notificado a la apelante. El 4 de marzo de 1943 la apelante solicitó de la corte inferior que declarara nulo el nombramiento de administradora hecho a favor de Mercedes Díaz por no ser ésta la viuda de Félix Matos Asencio.

En la vista de la moción la prueba de la compareciente Mercedes Díaz consistió en su propia declaración al efecto de que ella se casó con Félix Matos Asencio allá para fines del año 1923 en la "ciudad" de Brooklyn, New York, en una pequeña iglesia metodista; que le dieron un diploma grande, el cual se le ha extraviado; que ese matrimonio no se disolvió nunca y que durante el mismo adquirieron bienes. También presentó como prueba documental cuatro escrituras públicas otorgadas en los años 1929, 1930 y 1937, en las cuales Félix Matos, uno de los comparecientes, hizo constar que era

casado con Mercedes Díaz. Fué a virtud de estas escrituras que Félix Matos adquirió los bienes que ahora son objeto de la administración judicial. Por último presentó copia de la partida de defunción de Félix Matos Asencio, la cual, según declaró, fué preparada por una empleada del Hospital Presbiteriano, donde falleció Matos, y en la cual se hizo constar que Félix Matos Asencio era casado y que su esposa tenía 49 años.

La prueba de la apelante consistió en una carta que copiamos al margen(1) y en la declaración de la propia peticionaria al efecto de que Mercedes Díaz vivía en Santurce con su hijo pero que él le decía que no era casado con ella, aunque no sabe si se casó con ella; y la de Santos Matos Asencio, hermano de Félix Matos Asencio, al efecto de que éste y Mercedes Díaz vivían juntos, pero que Mercedes Díaz, una vez delante de él le dijo a Félix Matos Asencio que "no podía prohibirle que ella fuera a Estados Unidos, puesto que él no tenía ningún derecho, puesto que ella no era casada con él." Este incidente fué negado por Mercedes Díaz al declarar de nuevo.

Como cuestión de derecho arguyó la peticionaria que estableciendo el artículo 87 del Código Civil (ed. 1930) que "El matrimonio contraído en los Estados Unidos o en país extranjero, donde estos actos no estuviesen sujetos a un registro regular o auténtico, puede acreditarse por cualquiera de los medios admitidos en derecho," y sosteniendo Mercedes Díaz que su matrimonio con Félix Matos Asencio se efectuó en la

---

(1) "City of New York—Department of Health—295-315 Flatbush Avenue Extension.—Borough of Brooklyn. October 20, 1942.

"County Clerk, Hall of Records, Brooklyn, N. Y. Dear Sir:—Enclosed please find the letter from José Sabater requesting a copy of the marriage certificate of Félix Matos Asencio and Mercedes Díaz for the year 1923. This office has no record of this marriage. Very truly yours, (Estampado) Frank A. Calderone, M.D.—Secretary.—Enc. G.

"We have no record of this marriage in our office. Search made 1921–1922–1923 and 1924. (Firmado) Francis J. Sinnott, County Clerk, Kings County."

Ciudad de Nueva York, donde existe un registro regular o auténtico de matrimonios, la única prueba admisible para establecer dicho matrimonio era una copia del acta matrimonial.

La corte inferior desestimó la moción de la apelante y resolvió que no empece las disposiciones del citado artículo: " . . . la corte no puede sustraerse a la realidad de que pueden haberse celebrado matrimonios en los Estados Unidos y no estar al alcance de uno de los contrayentes el aportar copia certificada del acto. Sostener esta corte la disposición de la ley como una regla inflexible en estos casos crearía situaciones difíciles y aun perjudiciales en casos en que, por motivos ajenos a la voluntad de las partes, no pudiera obtenerse el acta correspondiente." Resolvió, además, que de las escrituras públicas presentadas en evidencia aparece que Félix Matos Asencio y Mercedes Díaz "se conducían como casados", y por lo tanto, en ausencia de prueba de que no eran casados, es de aplicación la presunción *"juris tantum"* consagrada en el artículo 102 de la Ley de Evidencia, inciso 29, al efecto de "que un hombre y una mujer que se conducen como casados, han celebrado un contrato legal de matrimonio."

La apelante en este recurso alega que la corte inferior erró al aplicar al presente caso el inciso 29 del artículo 102 de la Ley de Evidencia, y al ignorar las prescripciones positivas del Código Civil.

Antes de proceder a discutir y resolver la cuestión legal envuelta en este recurso, es conveniente hacer constar que la prueba documental presentada por la apelante, o sea la carta del Secretario del Departamento de Sanidad, no aparece siquiera firmada por éste y que la nota que tiene del Secretario del Condado de Kings si bien está firmada no hay certificación alguna en cuanto a su autenticidad. En otras palabras, dicha carta ni siquiera puede considerarse como una certificación negativa de los hechos que en ella se hacen constar. Esto no obstante, nos confrontamos con el hecho

de que dicha carta fué admitida sin oposición de clase alguna de la parte contraria.

Conjuntamente con el artículo 87, supra, los artículos 85 y 86 del Código Civil(²) establecen no sólo la regla general en cuanto a la forma de probar un matrimonio en Puerto Rico, sino también sus excepciones. [1] La regla general es que la prueba debe consistir en copia certificada del acta de matrimonio obrante en el Registro Civil. Esta prueba la califican Colín y Capitant en su obra Derecho Civil (Tomo 1°. pág. 335) la "prueba preconstituída" obrante en las actas del registro. El artículo 85 establece dos excepciones a la regla general en cuanto a matrimonios celebrados en Puerto Rico: 1, cuando el matrimonio se efectuó antes de regir la Ley de Registro Civil, se probarán por los medios establecidos en las leyes anteriores; y 2, si el libro de actas del matrimonio, dispuesto por dicha ley, hubiere desaparecido, será admisible cualquier prueba adecuada. El artículo 86 establece otra excepción a favor de los hijos legítimos (1 Manresa, Código Civil, 316 *et seq.*) o sea, si hubiere desaparecido el libro de actas, podrá probarse el matrimonio por "la posesión constante de estado de los padres, unida a las actas de nacimiento de sus hijos en concepto de legítimos." El artículo 87, supra, que es el que nos concierne en este caso, establece la excepción en cuanto a los matrimonios contraídos en los Estados Unidos o en país extranjero, donde estas actas no estuvieren sujetas a un registro regular o auténtico, podrá acreditarse el matrimonio "por cualquiera de los medios de prueba admitidos en derecho."

---

"(²) Artículo 85.—Los matrimonios celebrados antes del primero de enero do 1885, en que empezó a regir en Puerto Rico la ley de registro civil, se probarán por los medios establecidos en las leyes anteriores.

"Los contraídos después se probarán sólo por el acta del libro de matrimonios. Si éste hubiese desaparecido, será admisible cualquier prueba adecuada.

"Artículo 86.—En el caso a que se refiere el artículo anterior, la posesión constante de estado de los padres, unida a las actas de nacimiento de sus hijos en concepto de legítimos, será uno de los medios de prueba del matrimonio de aquéllos, a no constar que alguno de los dos estaba ligado por otro matrimonio anterior."

Es un hecho admitido por las partes en este caso que en la ciudad de Nueva York, de la cual es un condado Brooklyn, existe un registro de matrimonios. Sostiene la apelante que siendo esto así la única prueba admisible en este caso para probar el matrimonio de Félix Matos era una certificación del acta obrante en dicho registro, pues la excepción establecida en el artículo 87 no es aplicable al caso de autos. La cuestión es nueva en esta jurisdicción, pues no hemos encontrado ningún caso resuelto por esta corte interpretando el artículo 87 y tampoco las partes han citado alguno.

■ Creemos, sin embargo, que dicho artículo puede y debe interpretarse en relación con el artículo 250 del Código Civil (ed. 1930), que dispone que:

"Artículo 250.—Las actas del registro serán la prueba del estado civil, la cual sólo podrá ser suplida por otras en el caso de que no hayan existido aquéllas o hubiesen desaparecido los libros del registro, o cuando ante los tribunales se suscite una contienda."

■ Como puede verse, este artículo establece otras excepciones a la regla general, es decir, la prueba de las actas puede ser suplida por otras pruebas: 1, cuando no hayan existido aquéllas, es decir, las actas; 2, o hubieran desaparecido los libros del registro, y 3, cuando ante los tribunales se suscite una contienda.

El caso de autos cae de lleno dentro del ámbito de las excepciones 1 y 3. La carta presentada por la apelante y admitida sin oposición, tiende a demostrar que el acta de matrimonio de Félix Matos y Mercedes Díaz no existe en el Registro de Nueva York. Pero aparte de esto el hecho indiscutible es que se ha suscitado una contienda judicial en relación con la existencia del matrimonio.

Existe una marcada diferencia entre la forma en que están redactados los artículos 85 y 250 del Código Civil. En el primero se provee que los matrimonios contraídos después de regir la Ley de Registro Civil sólo se probarán por el acta del libro de matrimonio: y "si éste (es decir, el libro)

hubiese desaparecido será admisible cualquier prueba adecuada'', mientras que en el segundo, como hemos visto, se hace referencia no sólo al caso en que hubieren desaparecido los libros sino también a aquél en que las actas ''no hayan existido''. Comentando Manresa el artículo 327 del Código Civil de España, equivalente al 250 del nuestro (ob. cit. Tomo 2, pág. 805) reconoce que este artículo debe interpretarse como estableciendo excepciones adicionales en la admisión de prueba suplementaria del estado civil en relación con el artículo 53 del Código (artículo 85 del nuestro) y entre estas excepciones establece la siguiente: ''Cuando las actas del registro no hayan existido por no haberse solicitado la inscripción o porque aún solicitada no se hubiera extendido aquélla en los libros.''

Al mismo efecto Colín y Capitant, al comentar el artículo 46 del Código Civil francés([3]) parecido pero no igual al 250 del nuestro, dicen lo siguiente:

''Así, en caso de fuerza mayor, se hace una excepción a la regla de la prueba preconstituída, admitiéndose la prueba libre. Lo cual, por otra parte, no es más que aplicación del derecho común en materia de prueba (art. 1,348, 4º) y de esta sencilla regla de buen sentido: nadie está obligado a lo imposible.

''.       .       .       .       .       .       .       .       .

''Queda, finalmente, otra situación. Los registros se llevan bien en apariencia; ningún indicio permite afirmar que se hayan dejado algunas actas sin inscribir; sin embargo, se pretende que un hecho concerniente al estado civil de una persona no consta en él, *ya porque no haya sido declarado al oficial del estado civil, ya porque éste descuidara inscribir el acta en los registros.* ¿Podrá permitirse en este caso a las partes interesadas recurrir a los medios de prueba subsidiarios autorizados por el artículo 46?

''Muchas vacilaciones asaltan cuando se pretende responder afirmativamente a esta cuestión. Amparándose en un alegato semejante, podrían perpetrarse fraudes con más facilidad que en los casos pro-

---

([3]) ''Cuando no hayan existido registros, o cuando se hubieren perdido, la prueba de los mismos se recibirá lo mismo por documentos que por testigos; y, en estos casos, los matrimonios, nacimientos y defunciones podrán probarse, tanto por los registros y papeles de los padres difuntos como por testigos.''

cedentes; un aventurero, alegando la inexistencia relativa de los registros ensayaría asegurarse un estado civil engañoso con ayuda de testigos o de documentos falsos.

"Sin embargo, la solución negativa sería demasiado rigurosa: el hecho alegado por las partes puede ser exacto. Si así fuera, ¿cómo podría privarse a una persona de la posibilidad de probar un hecho concerniente a su estado civil o al de sus parientes? A los jueces incumbirá apreciar la sinceridad de la demanda y rechazarla si la estimaran desprovista de fundamento. No hay que olvidar que en Francia, fuera de los casos en que funciona la prueba preconstituída, los jueces no están obligados a aceptar las pruebas que se les aportan; deciden, no más que según su íntima convicción. Pueden negarse a admitir un hecho alegado, aunque afirmen su existencia varios testigos." (Bastardillas nuestras.)

Ob. cit., Tomo 1, págs. 822, 4.

Admiten, pues, estos autores, que aun cuando el texto del código francés no incluye el caso específico de no existir el acta, puede admitirse prueba subsidiaria concerniente al estado civil, correspondiendo a los jueces su apreciación.

Si nos hemos detenido a hacer estas citas es para demostrar que aun en otras jurisdicciones donde no prevalece nuestra Ley de Evidencia, se admite prueba "suplementaria o subsidiaria" para probar en determinados casos los hechos relativos al estado civil que por distintas causas no constan en el registro correspondiente. Empero, en Puerto Rico, en materia de pruebas, rige desde el año 1905 la Ley de Evidencia y esta Corte, desde el año 1913 resolvió, en un caso de filiación, *Camacho* v. *Balasquide,* 19 D.P.R. 590, interpretando el artículo 320 del Código Civil, hoy el artículo 250, supra, lo siguiente:

"Con respecto al artículo 320 del Código Civil y a la debida interpretación que ha de dársele, puede dicho artículo ser considerado como ley elemental y que el principio legal contenido en el mismo *ha sido modificado por la Ley de Evidencia.* La certificación de inscripción hecha en el registro civil relativa al nacimiento del niño no puede ser considerada como un documento incontrovertible. Es evidente que constituye prueba de su contenido, pero esta prueba es solamente *prima facie.* Nuestra Ley de Evidencia declara en su

artículo 71, que los asientos en libros o registros públicos u oficiales practicados en el desempeño de su cargo por un funcionario público u otra persona en el cumplimiento de su obligación constituyen evidencia *prima facie* de los hechos consignados en estos asientos, y el artículo 11 de la misma Ley de Evidencia nos dice lo que constituye evidencia *prima facie,* y la define expresando que es la que basta para probar un hecho determinado, mientras no se contradiga o desvirtúe con otra evidencia, y presenta como ejemplo, que el certificado de un registrador es evidencia *prima facie* de su inscripción, pero puede desecharse más tarde probando que no existe tal inscripción. Por tanto, este certificado hecho por el debido funcionario que demuestra la inscripción en el registro civil del nacimiento del niño es solamente *prima facie,* y no es un documento incontrovertible, y siendo esto así el demandante pudo correctamente ofrecer prueba testifical para probar que el contenido del mismo no era correcto. Esta proposición está sostenida en el tomo 2 de Wigmore sobre Evidencia, artículos 1335 y 1336, y Jones on Evidence, artículo 511, y en las autoridades citadas por ambos tratadistas.''⁴ (Bastardillas nuestras.)

Es más, en el caso de *Gerena* v. *Sales et al.,* 32 D.P.R. 360, una acción para anular el reconocimiento de una hija, se dijo y resolvió lo siguiente:

"Los apelantes, el esposo y la esposa, asignan varios errores. El primero es que la corte cometió error al admitir prueba testifical del matrimonio del demandado, Francisco Sales Gerena, con otra mujer, que no es la actual esposa, en la fecha de la concepción de la niña en este caso. Antes de ser admitida esta prueba testifical el demandante había ofrecido como prueba varias certificaciones de Lares y San Sebastián negativas de la existencia de ninguna anotación del

---

(*) Posteriormente se ha ratificado la doctrina en *Assise* v. *Curet,* 22 D.P.R. 555 (sobre nulidad de matrimonio); *Lebrón* v. *Lebrón,* 31 D.P.R. 891 (sobre daños y perjuicios por violación); *Pueblo* v. *Hernández,* 34 D.P.R. 324 (sobre acometimiento y agresión grave). Sin embargo, en *Burgos* v. *Medina,* 35 D.P.R. 529, sobre reivindicación, se decidió, según aparece del sumario, que "la preferencia establecida por el artículo 320 del Código Civil no es incompatible con el artículo 35 de la Ley de Evidencia, y cuando no existe razón por la cual la regla prescrita en el primero no deba ser cumplida, la admisión de prueba testifical para probar el estado civil de unas partes en el pleito constituye error perjudicial.'' Empero, se hizo constar en la opinión que la resolución de la corte no debía interpretarse en el sentido de negar la posibilidad de hacer menos rígida dicha regla en casos apropiados como se hizo en los de *Camacho* y *Lebrón.*

matrimonio del demandado con la alegada primera esposa. Aunque se formularon objeciones a estas certificaciones no hubo ninguna en cuanto a su forma negativa y su admisión no se asigna como error. De manera que era admisible la prueba secundaria del matrimonio. Cuando la partida del matrimonio no puede obtenerse, dicho matrimonio puede probarse por la reputación y presunciones, suponiendo que en Puerto Rico el matrimonio generalmente debe probarse por el registro civil. . .''

Al igual que en Puerto Rico, en el Estado de Nueva York los certificados del registro civil sólo constituyen prueba prima facie de su contenido. Véase sección 20(a) del Domestic Relations Law que dispone, en lo pertinente, que ''Cualquier transcripción del récord de un matrimonio, debidamente certificado por el comisionado de sanidad del estado o por la persona autorizada por él, constituirá prueba prima facie en toda corte y sitio de los hechos allí expuestos.'' En dicho Estado se ha resuelto, por ejemplo, en *Farmers' Loan & Trust Co.* v. *Wagstaff*, 185 N.Y.S. 812, en una acción de una mujer reclamando ser la viuda del causante, que eran admisibles las declaraciones de dicho causante, incluyendo una planilla sobre contribución de ingresos federal, tendente a demostrar que él era soltero; y en *In re Seymour*, 185 N.Y.S. 373, que las escrituras públicas otorgadas por un hombre y una mujer en las que se hacía constar que la mujer era la esposa del hombre, ''son reconocimientos solemnes por el hombre de su matrimonio''.

De acuerdo con la jurisprudencia citada, la certificación de un acta del Registro Civil, tanto en Puerto Rico como en Nueva York, constituye prueba prima facie de su contenido y dicha prueba puede ser controvertida. Por tanto, el hecho de que no conste un acta en el Registro Civil no puede sostenerse, en todo caso, como prueba incontrovertible de que el hecho correspondiente no haya sucedido. Cuando como en el caso de autos, se suscita una contienda ante las cortes para determinar si ha existido o no el vínculo matrimonial, la llamada prueba ''preconstituída'' de las actas del

registro puede ser suplida por otra, correspondiendo enton-
ces a las cortes determinar si dicha prueba es suficiente o
no para dejar establecido el hecho primordial.(⁵)   Tenemos,
además, en el caso de autos, el hecho de que la prueba docu-
mental presentada por la apelante tiende à demostrar que
el acta de matrimonio en cuestión no existe en el Registro
Civil de Brookyln.

   ■ Sólo nos resta considerar la prueba presentada por
ambas partes.   En primer término, está la declaración de
Mercedes Díaz al efecto de que ella se casó con Félix Matos
en una iglesia Metodista en Brooklyn hace veinte años; que
le dieron un diploma que se le ha extraviado; que nunca se
divorciaron y que adquirieron bienes durante el mismo.   Las
escrituras públicas presentadas como evidencia, otorgadas
durante un largo período de años y en las cuales se hace
constar el vínculo matrimonial entre Mercedes Díaz y el cau-
sante, tienen el valor probatorio de establecer la presunción
de gananciales de los bienes adquiridos por Félix Matos, los
cuales son los únicos objeto de la administración judicial,(⁶)
y además esas escrituras tienden a corroborar la declaración
de Mercedes Díaz de que ella era casada con Félix Matos.
Además, tanto la prueba testifical de la apelante como la de
la administradora, demuestran que Félix Matos y Mercedes
Díaz vivieron juntos durante cerca de veinte años conducién-
dose como casados en la comunidad donde vivían.

   Somos de opinión que las presunciones establecidas por
toda esta prueba en conjunto, es decir, el carácter ganancial
de los bienes y la conducta de Félix Matos y Mercedes Díaz

----

(⁵) Esta interpretación que damos a la frase ''cuando ante los tribunales se
suscite una contienda'' usada en el artículo 250, supra, es la misma que le ha
dado el Tribunal Supremo de Cuba en varias sentencias citadas en Núñez, Código
Civil, Tomo 2, pág. 452.

(⁶) Los bienes adquiridos a virtud do dichas escrituras tienen la presunción
de ser gananciales, artículo 1307 Código Civil; y hemos resuelto que ni aun el
presunto marido puede obtener que se varíe en el Registro de la Propiedad la
inscripción que establece dicha presunción, por el mero hecho de que él haga
constar en una escritura posterior que no era casado.   Véase *Martínez* v. *Regis-
trador*, 62 D.P.R. 862.

conduciéndose como casados durante veinte años, siendo parte de esa conducta la actuación de Félix Matos al otorgar las escrituras haciendo constar que era casado con Mercedes Díaz, no han sido destruídas por la carta antes mencionada. A base de estas presunciones no erró la corte inferior al sostener que, a los efectos de la administración judicial de los bienes de Félix Matos, correspondía a Mercedes Díaz, como presunta viuda, continuar como administradora. Aun cuando dicha corte pudo haber resuelto si, de acuerdo con la prueba, a su juicio se había probado afirmativamente que el matrimonio entre Félix Matos y Mercedes Díaz había sido celebrado, no lo hizo así. De manera que debe entenderse que el alcance, tanto de la resolución recurrida como de esta opinión, está circunscrito y limitado al hecho de que la presunción de la existencia del matrimonio no fué destruída por la prueba presentada por la apelante. La suficiencia de la prueba, en cualquier caso determinado, para establecer el hecho del matrimonio, en ausencia del acta del registro correspondiente, no como una presunción que surja de documentos o actuaciones sino como hecho afirmativo, es cuestión que debe ser cuidadosamente considerada y pesada por la corte ante la cual se plantea la cuestión.

*Debe confirmarse la resolución apelada.*