*Ex parte* FRANCISCO OTERO, peticionario.

Número 10824.
*Sometido:* 4 de marzo de 1953. *Resuelto:* 29 de diciembre de 1954.

*V. Polanco de Jesús,* abogado del apelante.

SENTENCIA

San Juan, Puerto Rico, a 29 de dic. de 1954

Se confirma la resolución apelada que dictó el Tribunal Superior, Sala de Arecibo, con fecha 23 de octubre de 1952, en el caso de epígrafe.

Así lo pronunció y manda el Tribunal y firma el Sr. Juez Presidente.

El Juez Asociado Sr. Belaval disintió.

A. CECIL SNYDER,
*Juez Presidente.*

Certifico:

IGNACIO RIVERA,
*Secretario.*

Opinión disidente del Juez Asociado Sr. Belaval.

El día 25 de octubre de 1886, nació en el pueblo de Ciales, Puerto Rico, un niño nombrado Francisco Otero. El día 8 de noviembre de 1886, el testigo presencial del nacimiento del niño, don José Colón González, compareció ante el señor Encargado del Registro Civil de Ciales don Pedro Martorell, a inscribir dicho niño, extendiendo el señor Encargado del Registro Civil de Ciales, la siguiente acta de nacimiento:

"Número 93. . . Francisco Otero. En el pueblo de Ciales, P. R., el 8 de noviembre de 1886, siendo las 9:30 de la mañana, en virtud de la declaración a mi presentada por José Colón y González, mayor de edad, de estado soltero, de profesión agricultor, natural de Juana Díaz, P. R., avecindado en la casa número . . . de la calle . . . barrio de Cordillera, término municipal de Ciales, Puerto Rico, yo, Pedro Martorell, Encargado del Registro Civil, procedo a extender esta *Acta de Nacimiento* haciendo constar:

"1. Que a las dos de la mañana del día veinticinco (25) de octubre de mil ochocientos ochenta y seis, y en esta población nació un niño de raza blanca, al que le puso por nombre Francisco.

"2. Que dicho niño es hijo ilegítimo de padres desconocidos.

"3. Que los abuelos se desconocen.

"4. Que .    .    .    .    .    .    .    .    .

"5. Que el expresado José Colón González hizo la predicha declaración en su carácter de testigo presencial del . . . . referido niño.

"Fueron testigos de este acto Juan Figueroa Robles, mayor de edad, de estado soltero, de profesión agricultor, natural de Ciales, P. R. y avecindado en la calle de esta población casa número . . . y José Cristino Rivera y Torres, de estado soltero, de profesión agricultor y avecindado en la calle de esta población casa número . . . . y habiendo leído lo preinserto a los que en él figuran, dichos testigos declaran constarle su certeza y todos lo aprueban y ratifican y firman los que supieron, haciéndolo por los que no, aquéllos a quienes rogaron lo hicieran, de todo lo que yo, el Encargado del Registro Civil, certifico: Pedro Martorell."

Esta acta de nacimiento fué extendida de acuerdo con los arts. 20, 47 y 48 de la Ley Provisional de Registro Civil es-

pañola, Ley núm. 2 de 17 de junio de 1870, y de acuerdo con el art. 34 del Reglamento para la Ejecución de las Leyes de Matrimonio y Registro Civil español, promulgado por Decreto del 13 de diciembre de 1870; extendida a Puerto Rico, la ley, por Real Decreto de 8 de enero de 1884, y el reglamento para su aplicación, por Real Decreto de 6 de noviembre de 1884, con algunas modificaciones que no vienen al caso.

Los arts. 20, 47 y 48 de la Ley Provisional de Registro Civil española, disponían lo siguiente:

"Art. 20.—Todo los asientos del Registro Civil deben expresar:

"1. El lugar, hora, día, mes y año en que son inscritos.

"2. El nombre y apellido del funcionario encargado del Registro y del que haga las veces de secretario.

"3. Los nombres y apellidos, edad, estado, naturaleza, profesión u oficio y domicilio de las partes y de los testigos que en el acto intervengan.

"4. Las declaraciones y circunstancias expresamente requeridas o permitidas por estas u otras leyes con relación a cada una de las diferentes especies de inscripciones; pero no otras declaraciones o circunstancias que por vía de observación, opinión particular u otro motivo creyesen conveniente consignar el juez o cualquiera de las demás personas asistentes.

"Art. 47.—Están obligados a hacer la presentación y declaraciones que se expresarán en los artículos sucesivos de esta ley las personas siguientes por el orden en que se mencionan:

"1. El padre.

"2. La madre.

"3. El pariente más próximo, siendo de mayor edad, de los que se hubiesen hallado en el lugar del alumbramiento al tiempo de verificarse.

"4. El facultativo o partera que haya asistido al parto, *o en su defecto cualquiera otra persona que lo haya presenciado*.

"5. El jefe del establecimiento público ó el cabeza de la casa en que el nacimiento haya ocurrido, si éste se efectuase en sitio distinto de la habitación de los padres.

"6. Respecto a los recién nacidos abandonados, la persona que los haya recogido.

"7. Respecto a los expósitos, el cabeza de familia de la casa o jefe del establecimiento dentro de cuyo recinto haya tenido lugar la exposición.

"Art. 48.—La inscripción del nacimiento en el Registro Civil expresará las circunstancias mencionadas en el art. 20, y además las siguientes:

"1. El acto de la presentación del niño.

"2. El nombre, apellido, edad, naturaleza, domicilio y profesión u oficio de la persona que lo presenta, y relación de parentesco u otro motivo por el cual esté obligada, según el art. 47 de esta ley, a presentarlo.

"3. La hora, día, mes y año y lugar del nacimiento.

"4. El sexo del recién nacido.

"5. El nombre que se le haya puesto o se le haya de poner.

"6. Los nombres, apellidos, naturaleza, domicilio y profesión u oficio *de los padres y de los abuelos paternos y maternos si pudiesen legalmente ser designados,* y su nacionalidad si fuesen extranjeros.

"7. *La legitimidad o ilegitimidad del recién nacido si fuese conocida;* pero sin expresar la clase de ésta a no ser la de los hijos legalmente denominados naturales."

El art. 34 del Reglamento para la Ejecución de las Leyes de Matrimonio y Registro Civil español, disponía lo siguiente:

"Art. 34.—Para la inscripción del nacimiento en el Registro se cumplirán las prescripciones de los arts. 20 y 48 de la ley de Registro Civil, con las aclaraciones siguientes:

"1. Para expresar la edad, naturaleza, domicilio y profesión u oficio de las personas mencionadas en los núms. 2 y 6 de dicho art. 48, se tendrá presente lo dispuesto en el art. 21 de este Reglamento.

"2. Para expresar el sexo del recién nacido, se usará de las palabras un niño si es varón, y si fuere hembra una niña.

"3. Cuando el recién nacido no tuviere ya nombre puesto, el declarante que hiciere su presentación manifestará cuál se le ha de poner, pero el encargado del Registro no consentirá que se pongan nombres extravagantes o impropios de personas, ni que se conviertan en nombres los apellidos.

"*Cuando el niño no tenga padres conocidos, el encargado del Registro le pondrá un nombre y un apellido usuales que no revelen ni indiquen aquella circunstancia.*

"Si el niño fuere expósito, y entre los objetos hallados con él hubiere algún escrito que indique su nombre y apellido, o el deseo de que lleve algunos determinados, se respetará la indicación si no fuese inconveniente.

"4. Cuando se presentaren dos niños gemelos, se hará una inscripción para cada uno de ellos, indicando con precisión y exactitud la hora del nacimiento de cada uno, si fuere conocida; si no lo fuere, se expresará así en la inscripción.

"5. No se expresarán en las actas de nacimiento, respecto de las personas que en ellas deben ser nombradas, títulos o distinciones cuya posesión legal no conste o no se justifique competentemente en el acto."

El día 12 de agosto de 1952, o sea, sesenta y seis años después de haberse extendido el acta de nacimiento correspondiente a su nacimiento, el peticionario don Francisco Otero acudió ante el Tribunal Superior de Puerto Rico, Sala de Arecibo, alegando que el peticionario es hijo ilegítimo o natural de la que en vida fué doña Salvadora Otero, con la cual vivió el peticionario como hijo, hasta el fallecimiento de su señora madre, ocurrida cuando el peticionario tenía diez años de edad; que el declarante ha sido conocido desde su nacimiento como hijo de Salvadora Otero, pero por impedirlo las leyes vigentes a la fecha de su nacimiento, la persona que lo inscribió no se atrevió a hacer constar los nombres de los padres del peticionario. En virtud de los hechos alegados, solicitó que en el acta de nacimiento del peticionario se consignara que Salvadora Otero es la madre natural o ilegítima del declarante y ofreció prueba testifical para justificar su caso, de acuerdo con el inciso segundo del art. 31 de la Ley núm. 24 de 22 de abril de 1931 (pág. 229), según dicho inciso quedó enmendado por la Ley núm. 119 de 26 de abril de 1950 (Leyes de 1949–50, pág. 305).

El 5 de septiembre de 1952, el caso se vió ante dicha sala, con asistencia del señor Fiscal de la Sala, quedando establecido por la prueba los siguientes hechos: (1) que don Eusebio Colón, siendo casado con otra señora, vivió con doña Salvadora Otero, y de esta última tuvo cuatro hijos, nombrados

José, María, Eusebio y el peticionario don Francisco Otero; (2) que el peticionario nació para el 1886 en la Municipalidad de Ciales, Puerto Rico; (3) que el peticionario vivió con su madre hasta que ésta murió hace más de cuarenta años; (4) que el acta de nacimiento del peticionario fué preparada por don José Colón González, un pariente de don Eusebio Colón.

La razón que tuvo en el 1886, el señor Encargado del Registro Civil de Ciales don Pedro Martorell, para inscribir al peticionario como *"hijo ilegítimo de padres desconocidos"*, era la prohibición contenida en el art. 51 de la Ley Provisional de Registro Civil española, que disponía: "respecto a los recién nacidos de origen ilegítimo, no se expresará en el Registro quiénes sean el padre ni los abuelos paternos, a no ser que el mismo padre, por sí o por medio de apoderado con poder especial y auténtico haga la presentación del niño y la declaración de su paternidad; lo mismo se observará en cuanto a la expresión del nombre de la madre y de los abuelos maternos." Sabemos que para aquel tiempo se consideraban ilegítimos, (bastardos) todos los hijos nacidos fuera de matrimonio, que no resultaran naturales. Leyes IX y XI de Toro: Comentarios a las Leyes de Toro según su espíritu y el de la Legislación de España en que se tratan las cuestiones prácticas —Juan Álvarez Posadilla, (Ed. de la Imprenta que fué de Fuentenebro), (1833).

Esta prohibición se mantuvo en el art. 15 de la Ley núm. 61 de 9 de marzo de 1911 (pág. 197), Ley para Establecer una Ley del Registro Civil, que disponía, "respecto a los recién nacidos de origen ilegítimo, no se expresará en el Registro quiénes son el padre, ni los abuelos paternos, a no ser que el mismo padre por sí haga la declaración de nacimiento y la de su paternidad; lo propio se observará en cuanto a la expresión del nombre de la madre y de los abuelos maternos, cuando la declaración de nacimiento se hiciese sólo por el padre." La misma prohibición se mantuvo, pero sólo en cuanto al padre y la madre y no a los abuelos paternos y maternos,

en el art. 20 de la Ley núm. 24 de 22 de abril de 1931, Ley del Registro Demográfico de Puerto Rico, que dispone: "respecto de los recién nacidos de origen ilegítimo, no se expresará en el registro quién es el padre, a no ser que el mismo padre por sí haga la declaración de nacimiento y de su paternidad; lo propio se observará, en cuanto a la expresión del nombre de la madre cuando la declaración de nacimiento se hiciese sólo por el padre." Al ser enmendado dicho art. 20 por la Ley núm. 37 de 21 de noviembre de 1941, ((2) pág. 133), se mantuvo la misma prohibición, ya que se trata de una enmienda por adición. Pero tal prohibición desaparece cuando vuelve a enmendarse el art. 20 por la Ley núm. 117 de 12 de mayo de 1943 (pág. 345), pues queda totalmente sustituído por un texto que dispone: "en los certificados de inscripción de nacimiento que expidan los encargados del Registro Demográfico, a partir de la fecha de esta ley no se consignará dato alguno sobre la legitimidad o ilegitimidad del nacimiento, ni sobre el estado civil de los padres, aunque tales datos consten de dichas inscripciones, a menos que el solicitante del certificado requiriere expresamente la consignación de esos datos, previa justificación de la necesidad de los mismos." De manera pues, que cuando el ilustrado juez sentenciador de la Sala de Arecibo dicta su resolución denegando la enmienda al acta de nacimiento solicitada, ya no hay prohibición expresa en la ley, en cuanto a que en las inscripciones de los recién nacidos de origen ilegítimo, no se exprese el nombre del padre o de la madre, a menos que el reconocimiento sea hecho expresamente por dichos padre o madre.

Ahora bien el verdadero fundamento que tuvo el ilustrado juez sentenciador para dictar la resolución apelada, no fué tal prohibición, sino "por entender este tribunal que se trata ciertamente de establecer la filiación del peticionario respecto de doña Salvadora Otero."

La pregunta es, el hecho de ordenarse al Registrador Demográfico de Puerto Rico, hacer una rectificación en una partida de nacimiento para que conste el nombre de la madre del

inscrito, ¿equivale en realidad de derecho a una sentencia declaratoria de filiación?    Veamos:

El art. 35 de la Ley Provisional de Registro Civil española, en vigor desde el 1844 hasta el 1902, disponía: "los nacimientos, matrimonios y demás actos concernientes al estado civil de las personas que tengan lugar desde el día en que empiece a regir esta ley, *se probarán con las partidas del Registro que por ella se establece*, dejando de tener el valor de documentos públicos las partidas del Registro eclesiástico referentes a los mismos actos.   Los que hubieren tenido lugar en fecha anterior se acreditaran por los medios establecidos en la legislación vigente hasta la fecha indicada."   Esta Ley Provisional de Registro Civil española de 17 de junio de 1870, se deja en vigor cuando se adopta el Código Civil español, de 1888, extendido a Puerto Rico por Real Decreto de 31 de julio de 1889, cuyo art. 327 dispone: "las actas del Registro serán la prueba del estado civil, la cual sólo podrá ser suplida por otras en el caso de que no hayan existido aquéllas o hubieran desaparecido los libros del Registro *o cuando ante los Tribunales se suscite contienda*" y el art. 332 que dispone, "continuará rigiendo la Ley de 17 de junio de 1870, en cuanto no esté modificada por los artículos precedentes."

Durante el período de 1902 al 1911, rige el art. 319 del Código Civil revisado de Puerto Rico de 1902, que dispone: "el registro del estado civil comprenderá las inscripciones o anotaciones de nacimientos, matrimonios, emancipaciones, reconocimientos y legitimaciones y defunciones y estará a cargo de los jueces municipales en Puerto Rico" y el art. 323 que dispone: "continuará rigiendo la Ley especial del Registro Civil, en cuanto no esté modificada por los artículos precedentes," (se refiere a la Ley Provisional de Registro Civil española.)

Después del 1911 rige la primera Ley especial del Registro Civil, propiamente puertorriqueña, la Ley núm. 61 de 9 de marzo de 1911, cuyo art. 1, según enmendado por la Ley núm. 46 de 7 de marzo de 1912 (pág. 88), dispone: "los actos

concernientes al estado civil de las personas se harán constar en el registro destinado a ese efecto que se denominará Registro Civil." El Código Civil de Puerto Rico del 1930, por otro lado, dispone en su art. 250, que "las actas del registro serán la prueba del estado civil, la cual sólo podrá ser suplida por otras en el caso de que no hayan existido aquéllas o hubieren desaparecido los libros del registro *o cuando ante los tribunales se suscite una contienda.*"

Pero cuando se adopta la Ley núm. 24 de 22 de abril de 1931, Ley Disponiendo lo Necesario para la Inscripción de Nacimientos, Casamientos y Defunciones y para otros fines, que se conocerá como Ley del Registro Demográfico de Puerto Rico, que deroga expresamente la Ley núm. 61 de 9 de marzo de 1911 "según ha sido subsiguientemente enmendada y toda ley o parte de ley, decreto o resolución que se oponga a la presente", se dispone en el art. 38: "a petición de parte interesada, el Comisionado de Sanidad o la persona autorizada por él, suministrará copia certificada de cualquier certificado de nacimiento, casamiento o defunción que se haya inscrito y registrado en el Registro General de acuerdo con las disposiciones de esta ley . . . . *La copia del récord* de cualquier nacimiento, casamiento o defunción, después que sea certificada por el Comisionado de Sanidad o por la persona autorizada por él, *constituirá evidencia prima facie* ante todas las cortes de justicia de los hechos que consten en la misma . . ." Dicha disposición permanece inalterada a través de las enmiendas que sufre dicho art. 38, en virtud de la Ley núm. 25 de 17 de abril de 1936 ((1) pág. 213), de la Ley núm. 112 de 6 de mayo de 1941 ((1) pág. 793), de la Ley núm. 99 de 12 de mayo de 1943 (pág. 267) y de la Ley núm. 188 de 2 de mayo de 1951 ((1) pág. 471).

No hay duda, pues, que desde la aprobación de la Ley de Registro Demográfico de Puerto Rico, el certificado de nacimiento pierde su conclusividad como documento suficiente para probar el estado civil de una persona, y, se convierte en un documento prima facie suficiente, lo cual significa que su

suficiencia se reconoce hasta el momento mismo en que se establecen por otra clase de prueba los verdaderos hechos filiatorios. Basta pensar un momento para darnos cuenta que ésta es la más científica y a la par la más práctica, manera de disponer de los problemas de un registro público de estado civil. Como cuestión de hecho, el registro de nacimientos, se redacta, en virtud de información oral suplida por las partes interesadas, algunas veces personas distintas a los propios progenitores, y sería peligroso conceder carácter de conclusividad a un documento que se redacta en virtud de información oral de una sola parte. Como cuestión de realidad, lo importante para una sociedad política o para un orden jurídico, es tener un sistema fácil de inscripción tanto de nacimientos, matrimonios y defunciones como de los otros actos jurídicos que declaran el estado civil de una persona, para fines de censo, conscripción militar, inscripción electoral o servicios estadísticos.

Desde el momento que el contenido del documento, sólo constituye evidencia prima facie del hecho del nacimiento y del estado civil del inscrito, es indudable que en virtud de la inscripción de un nacimiento no se declara ningún hecho filiatorio que sea irrevocable o valedero contra el interés público o contra el interés de terceras personas, y no tenemos por qué abrigar el temor que cualquiera inscripción, o cualquiera rectificación, corrección, adición o enmienda de una inscripción anterior en el Registro Demográfico, equivalga a una sentencia declaratoria de filiación.

En cuanto al procedimiento para corregir errores en una inscripción de nacimiento, es bueno recordar, el artículo 18 de la Ley Provisional de Registro Civil, española, que disponía: "firmada ya una inscripción, no se podrá hacer en ella rectificación, adición ni alteración de ninguna clase sino en virtud de ejecutoria del Tribunal competente, con audiencia del ministerio y *de las personas a quienes interese;* esta ejecutoria se inscribirá en el Registro donde se hubiere cometido la equivocación, expresándose en el nuevo asiento el Tribunal

que la haya dictado, su fecha, juicio en que haya recaído, resolución que contenga y día de su presentación al encargado del registro para su inscripción; al margen de ésta y de la inscripción rectificada se pondrá una sucinta nota de mutua referencia."

La Real Orden del 17 de Enero de 1872, "aclarando el artículo 18 de la ley; manera de rectificar los errores que se cometan al extender las actas de inscripción; papel sellado; derechos de expediente"—8 Alcubilla: Diccionario de Administración 285 y 308 (Cuarta Ed. de J. López Camacho de Madrid), (1887)—todavía esclarece más el procedimiento que debía seguirse en casos de rectificaciones, adiciones o alteraciones:

"Considerando que si bien el citado art. 18 dispone que firmada ya una inscripción no pueda hacerse en ella rectificación, adición ni alteración de ninguna clase sino en virtud de ejecutoria del Tribunal competente, con audiencia del Ministerio público y de las personas a quienes interese, esta disposición no puede referirse a errores materiales cometidos al inscribir un nombre o apellido, o cualquiera otra palabra o frase que no altere la esencia de la inscripción ni afecte directa ni indirectamente el estado civil de la persona inscrita, sino que por lo mismo que es tan exigente se comprende que sólo puede referirse a las alteraciones, rectificaciones o modificaciones que afecten a la esencia de la inscripción o al estado civil de la persona.

"Considerando que de no interpretarse de este modo el citado artículo resultaría el absurdo de que para rectificar cualquier error material, por insignificante que fuese, como escribir Pedro por Pablo, uno por una, se haría preciso celebrar un juicio en que recayese sentencia declarando el error cometido, lo que además sería costoso y dilatorio, contra el espíritu y tendencias de la expresada ley;

"S. N. el Rey (Q.D.G.), conformándose con lo informado por esta Dirección, se ha servido declarar como regla general:

"1. Que lo dispuesto en el art. 18 de la ley de Registro civil se refiere *a las rectificaciones, adiciones o alteraciones que de alguna manera afecten a la esencia de la inscripción o al estado civil o condiciones de la persona inscrita.*

"2. Que los demás errores materiales que se adviertan después de firmada la inscripción, y consistan en la equivocación de

un nombre, apellido, fecha, palabra o frase, puedan subsanarse acreditándose el error ante el mismo juez municipal encargado del Registro Civil en que se hubiese hecho la inscripción, quien exigirá la prueba que según los casos estime oportuna, y dictará el correspondiente auto declarando en qué consiste el error; cuyo auto se copiará al margen del asiento de inscripción, firmando esta anotación el juez, el secretario, la persona que promueva el expediente, y si fuese posible, la persona que hizo la primera declaración, u otra a su ruego si no pudiera firmar.

"3. Por la instrucción del expediente para hacer la expresada declaración, no se devengarán derechos, y se usará del sello de oficio que deberán suministrar los interesados." (Gaceta del 20 de enero).

Cuando se aprobó la Ley núm. 61 de 9 de marzo de 1911, Ley para Establecer una Ley de Registro Civil, que disponía en su art. 6: "firmada una inscripción, no podrá en ella hacerse rectificación, adición, ni enmienda, que altere sustancialmente el acto a que se refiera, sino en virtud de una orden de una corte de distrito; esta ejecutoria se inscribirá en el registro, poniéndose al margen de la inscripción rectificada y de la que se haga nuevamente, una sucinta nota de mutua referencia", se omitió la descripción del procedimiento que contenía el art. 18 de la Ley española, pero se dispuso un procedimiento ante la anterior corte de distrito.

Cuando se aprobó la Ley núm. 24 de 22 de abril de 1931 conocida como Ley del Registro Demográfico de Puerto Rico, se dispuso en su art. 31 que ". . . . las omisiones o incorrecciones que aparezcan en cualquier certificado antes de ser registrado en el Departamento de Sanidad podrán ser salvadas insertando las correcciones o adiciones necesarias en tinta roja en dicho certificado, pero luego de haber sido archivado en el Departamento de Sanidad, no podrá hacerse en los mismos, *rectificación*, adición, ni enmienda alguna que altere sustancialmente el mismo, sino en virtud de una orden de una Corte de Distrito, cuya orden, en tal caso, será archivada en el Departamento de Sanidad haciendo referencia al certificado a que corresponda", se omitió otra vez la descripción del pro-

cedimiento que contenía el art. 18 de la ley española, pero se dispuso un procedimiento ante la anterior Corte de Distrito.

Es cuando se enmienda el art. 31 de la Ley del Registro Demográfico de Puerto Rico, por la Ley núm. 119 de 26 de abril de 1950, que se describe el procedimiento que debe seguirse para obtener la orden de una anterior Corte de Distrito sobre cualquier rectificación, adición o enmienda. Dispone dicha ley: "para obtener dicha orden deberá presentar el interesado una solicitud a la Corte de Distrito de su domicilio, exponiendo bajo juramento su pretensión y formulándola debidamente; radicada la solicitud y practicadas en corte abierta las pruebas ofrecidas con asistencia del fiscal del distrito, la corte dictará el auto que proceda; el auto en que se autorice la rectificación o enmienda de un asiento en el antiguo Registro Civil se inscribirá mediante anotación extendida en debida forma al margen de la inscripción rectificada. La rectificación, adición o enmienda de un certificado ya archivado en el Registro General Demográfico, se hará insertando en él las correcciones, adiciones o enmiendas autorizadas por el tribunal. Las tachaduras que fueren necesarias se harán de modo que siempre se pueda leer la palabra tachada." Como se ve la Legislatura de Puerto Rico vuelve a incorporar el viejo procedimiento del art. 18 de la Ley Provisional de Registro Civil de 17 de junio de 1870 para todo cuanto se refiera a rectificación, adición o alteración de un acta de nacimiento, inscrita en el antiguo Registro Civil.

Como se ve, se trata de un procedimiento especial, donde se ventila como una cuestión de interés público, entre el estado y un ciudadano, la corrección de un registro público, y por lo tanto, resulta un procedimiento totalmente independiente de cualquiera acción plenaria, para obtener la declaración de ciertos derechos filiatorios contra otras personas. En cuanto a anteriores hijos ilegítimos, mientras no desapareció la prohibición de consignar en el Registro Civil o en el Registro General Demográfico, el nombre de los padres y abuelos paternos y maternos, estamos conformes con que hubiera sido

imposible utilizar este procedimiento para ninguna rectificación, adición o enmienda referentes a los padres ilegítimos o naturales. Pero después de la enmienda que sufre el art. 20 de la Ley de Registro Demográfico de Puerto Rico, no hay razón ninguna para que dicho procedimiento no se pueda utilizar para rectificar un error consignado en el antiguo Registro Civil, en cuanto a la ascendencia natural del peticionario. Debe entenderse, desde luego, que tal rectificación no constituye una declaración judicial de derechos filiatorios que puedan afectar el derecho de otras terceras personas, ni prohibiría la impugnación correspondiente por cualquiera parte interesada: *Juan Bigas, Sucrs.* v. *Comisión Industrial*, 71 D.P.R. 336, (*Negrón Fernández*), (1950), cita precisa a la pág. 343; *Abintestato de Félix Matos*, 63 D.P.R. 1012, (*Todd, hijo*), (1944), cita precisa a la pág. 1019, et seq.; *Quiñones* v. *Galeno*, 53 D.P.R. 361, (*Wolf*), cita precisa a la pág. 564, et seq.

*Debe revocarse la resolución apelada y dictarse otra ordenando la rectificación del asiento solicitado por el peticionario.*