SARA TOSADO, demandante y apelada, *v.* REINALDO TENORIO, demandado y apelante.

*Número:* AC-96-22          *Resuelto:* 20 de mayo de 1996

*Elí B. Arroyo*, abogado del apelante.

## PER CURIAM
### (Regla 50)

### I

El Sr. Reinaldo Tenorio apela la sentencia del Tribunal de Circuito de Apelaciones, Circuito Regional III (Hons. Arbona Lago, Gierbolini y Giménez Muñoz, Jueces), que revocó una resolución del Tribunal de Primera Instancia que le había relevado del pago de una pensión alimentaria fijada por un tribunal de California.

El trasfondo fáctico se origina el 27 de *marzo de 1973*, fecha cuando el Tribunal Superior, Sala de Arecibo, dictó sentencia en *rebeldía* en la cual disolvió el vínculo matrimonial entre la Sra. Sara Tosado y el señor Tenorio por trato cruel y le impuso veinticinco dólares ($25) semanales para alimentos de sus tres (3) niñas. En esa causa la señora Tosado no alegó o dijo que estuviera embarazada y que el señor Tenorio fuera el padre de la criatura que iba a nacer. Incluso, cuando nació el niño, Marcos Francisco, fue inscrito como hijo de la señora Tosado.

Años más tarde, el *6 de octubre de 1978*, el Condado de Santa Clara, California, reclamó del señor Tenorio el reembolso del dinero gastado para mantenimiento del niño Marcos Francisco, según la Ley Uniforme de Reciprocidad para la Ejecución de Obligaciones sobre Alimentos (en adelante Ley Uniforme de Reciprocidad). En la querella solicitó que pagara ciento cincuenta dólares ($150) mensuales.[1] Un juez superior expidió una orden para concluir que el Departamento de Servicios Sociales de Santa Clara había gastado ese dinero y la suma de ciento cincuenta dólares ($150) necesaria para mantener al menor.

El *24 de noviembre de 1978* la Administración de Tribunales de Puerto Rico remitió al Secretario del Tribunal Superior, Sala de Arecibo, los documentos correspondientes a

---

[1] Figura como demandante el condado de Santa Clara y aparece juramentada por una Fiscal de Distrito de dicho condado.

la querella de alimentos del tribunal de California para el trámite correspondiente. El *5 de febrero de 1979* el Tribunal Superior dictó sentencia en la cual dispuso la prestación de alimentos bajo la Ley Uniforme de Reciprocidad, en virtud de las alegaciones de que el señor Tenorio era el padre del menor Marcos Francisco, nacido *el 7 de diciembre de 1973*, y no le proveía alimentos. No surge que el señor Tenorio hubiese comparecido al tribunal antes ni el día de la sentencia.

El *24 de marzo de 1978* la Procuradora Especial de Relaciones de Familia (en adelante Procuradora Especial) lo citó a su oficina y le expuso que, según los expedientes del Tribunal Superior, estaba atrasado por la cantidad de ocho mil ochocientos treinta y ocho dólares ($8,838) de pensión alimentaria y que estaba obligado a pagarlos para el beneficio de sus hijos menores de edad que se encontraban en Estados Unidos.

Transcurrieron varios años. El *19 de agosto de 1987* se celebró una vista a la cual compareció el señor Tenorio con su abogado. Se dictó resolución en la que se hizo constar que dos (2) de las hijas habían contraído matrimonio, se le reconoció un crédito y se le ordenó depositar la suma de sesenta dólares ($60) mensuales.

El *26 de mayo de 1990* la Procuradora Especial presentó moción de desacato en la que hizo referencia a la Sentencia de *5 de febrero de 1979*. Lo citaron para vista. El *27 de agosto de 1990* compareció a su nombre una abogada de oficio, y se reseñaló para el *13 de septiembre de 1990*, para investigar sobre el matrimonio de las hijas. Se celebró dicha vista y se ordenó al estado iniciador (California) que investigara sobre la emancipación de las menores.

El *8 de marzo de 1991* se dictó una resolución en la que se hizo referencia a las tres (3) hijas del matrimonio y se relevó del pago de la pensión alimentaria. Luego, la Procuradora Especial solicitó que se señalara *vista de filiación*.

El *15 de diciembre de 1992* el tribunal de instancia ordenó que se llevara a cabo un examen de ADN, el cual nunca se realizó.

Finalmente, se celebró una vista que culminó con la Resolución de *19 de junio de 1995* que lo relevó de la pensión fijada en 1978 en el estado de California.

Dicha resolución fue revocada por el Tribunal de Circuito de Apelaciones el *31 de enero de 1996*, y contra esta sentencia recurrió el señor Tenorio ante nos.

## II

En su primer señalamiento aduce que fue incorrecta la actuación del Tribunal de Circuito de Apelaciones al resolver que, bajo la presunción de paternidad, quedó establecido un caso prima facie que no le permitía negar la paternidad, alegadamente inexistente. *No tiene razón.*

Primeramente, es menester dejar establecido el principio rector en materia filiatoria. El Art. 113 del Código Civil, 31 L.P.R.A. sec. 461, a manera de investidura legal, crea el estado de presunción filial legítima:

> Son hijos legítimos los nacidos después de los ciento ochenta días (180) siguientes al de la celebración del matrimonio y antes de los trescientos (300) días siguientes a su disolución.
> Contra esta legitimidad no se admitirá otra prueba que [no sea] la imposibilidad física del marido para tener acceso con su mujer en los primeros ciento veinte días de los trescientos (300) que hubiesen precedido al nacimiento del hijo.

A su amparo nuestra doctrina ha establecido que la filiación es legítima (surge del matrimonio) cuando el padre y la madre del niño están casados entre sí. El referido Art. 113 establece una presunción de "legitimidad" para los hijos nacidos durante el período de los ciento ochenta (180) días siguientes a la celebración del matrimonio y en los trescientos (300) días siguientes a su disolución. Véanse: *Almodóvar v. Méndez Román*, 125 D.P.R. 218 (1990); *Moreno Álamo v. Moreno Jiménez*, 112 D.P.R. 376 (1982).

Su origen se remonta siglos atrás, al derecho romano encarnado en la máxima *pater is est quem nuptiae demostrant*, como principio inspirado en la doctrina médica prevaleciente de Hipócrates. Scaevola, *Código Civil*, 1942, T. 3, pág. 291; Manresa, *Código Civil Español*, 156, Vol. 1, págs. 642–644; Muñoz Morales, *Reseña Histórica y Anotaciones al Código Civil de Puerto Rico*, 1947, Parte I, págs. 343–344. En su primer párrafo el precepto consagra "... la presunción de legitimidad que, a su vez, se bifurca en dos sentidos: que la concepción ha acaecido vigente el matrimonio y que ha sido por obra del marido...". Lacruz Berdejo y Sancho Rebullida, *Derecho de Familia*, 1978, T. II, pág. 22. En otras palabras, un hijo nacido vigente un matrimonio o durante el período señalado en el precepto se presume concebido en y del matrimonio, esto es, una presunción de paternidad del marido. (Énfasis suprimido.) *Moreno Álamo v. Moreno Jiménez*, supra, pág. 379.

■ Sin embargo, también hemos resuelto que esa presunción de carácter *juris tantum* es relativa y puede ser destruida mediante prueba en contrario, reconociendo así el principio de que aún la probabilidad racional en que se funda no es absoluta ni equivale a la verdad. *Moreno Álamo v. Moreno Jiménez*, supra.

En el caso de autos, el Tribunal de Circuito de Apelaciones resolvió con arreglo a derecho. En ningún momento le ha negado al señor Tenorio la oportunidad de incoar una acción de impugnación de legitimidad. Al contrario, le indicó la disponibilidad en cualquier acción filiatoria que sea procedente.

El señor Tenorio pretende que determinemos que su alegada paternidad era inexistente. No podemos ir contra la ley: el menor Marcos Francisco nació en los trescientos (300) días siguientes a la disolución de su matrimonio. Ello activó la presunción de paternidad, la cual no ha derrotado adecuadamente por los medios disponibles. Si no está de acuerdo con la presunción de que el menor es su hijo, ese es el curso que ha de seguir.

■ Contra esta conclusión no cabe su alegato de que no es el padre por que no se inscribió con su apellido en el Registro Demográfico. Hemos resuelto:

La inscripción en el Registro Demográfico de Puerto Rico no constituye de por sí una declaración incontrovertible de un hecho filiatorio. ...

"No hay duda, pues, que desde la aprobación de la Ley de Registro Demográfico de Puerto Rico, el certificado de nacimiento pierde su conclusividad como documento suficiente para probar el estado civil de una persona y, se convierte en un documento prima facie suficiente, lo cual significa que su suficiencia se reconoce hasta el momento mismo en que se establecen por otra clase de prueba los verdaderos hechos filiatorios." *Vélez v. Franqui*, 82 D.P.R. 762, 774–775 (1961), citando a *Ex parte Otero*, 77 D.P.R. 754, 762–763 (1954), opinión disidente del Juez Asociado Señor Belaval.

## III

Discutiremos en conjunto el segundo y tercer señalamiento. Básicamente se señala que la sentencia del Tribunal Superior de Santa Clara, California, no era válida por carecer dicho foro de jurisdicción. Además, expone que erró el Tribunal de Circuito de Apelaciones al dictar sentencia sin siquiera considerar su planteamiento de ausencia de legitimación para iniciar la acción, tanto de la señora Tosado como de la Procuradora Especial.

Ambos señalamientos hay que examinarlos a la luz de la Ley Uniforme de Reciprocidad. En *Robles v. Otero de Ramos*, 127 D.P.R. 911, 924 (1991), dijimos:

Siete años más tarde, y con el firme propósito de "mejorar y extender, por medio de legislación de reciprocidad, la ejecución de las obligaciones sobre alimentos y hacer uniforme la ley a ese respecto", 32 L.P.R.A. sec. 3311, la Asamblea Legislativa promulga la referida Ley Núm. 71 de 1956. Según su historial legislativo, esta medida constituyó un esfuerzo del legislador por proveer una ley moderna y uniforme sobre reclamaciones de alimentos entre las jurisdicciones estatales de los Estados Unidos y el Estado Libre Asociado de Puerto Rico. Véase Informe de la Comisión de lo Jurídico sobre el P. de la C. 1427, 8 Diario de Sesiones pág. 591 (1956).

En la consecución de esos fines, la Ley Núm. 71 de 1956, ante, estableció un procedimiento encaminado a acelerar las

reclamaciones de alimentos para beneficio de los alimentistas. La misma es de aplicación, al igual que la Ley Núm. 49 de 1949, ante, a todos aquellos casos en que el alimentante resida en Puerto Rico y el alimentista en alguno de los estados o territorios de los Estados Unidos y viceversa. (Énfasis suprimido.)

Con esta ley se procuró extender y mejorar la Ley Núm. 49 de 29 de septiembre de 1949 que, en lo pertinente, disponía:

De la misma manera, mediante la referida Ley Núm. 49 se le otorgó poder a los tribunales locales a ordenar el pago de pensiones alimenticias en aquellos casos en que el menor de edad residiera en cualquier estado o territorio de los Estados Unidos y radicare allí una reclamación de alimentos por sí mismo, o por conducto de un abogado o funcionario de tal estado o territorio, contra la persona legalmente responsable de proveer tales alimentos que fuera residente de Puerto Rico; confiriéndole autoridad al *"fiscal del distrito"* para iniciar y tramitar la querella correspondiente. 32 L.P.R.A. sec. 3331(2). (Énfasis suplido.) *Robles v. Otero de Ramos*, supra, pág. 923.

Esta disposición legal es sencilla y clara; puede presentarse la reclamación de alimentos por un abogado o funcionario del estado o territorio iniciador.

Las argumentaciones del demandado, señor Tenorio, de que la sentencia de California no era válida, por falta de jurisdicción, no son correctas. La querella se presentó por el estado de California, que tenía esa autoridad.

Nada afecta que no estuviera allá presente pues, en California, sólo se presentó la querella. Si en esa acción se le impone la obligación de pagar una pensión, se remite copia de la reclamación, con todas las órdenes, las deposiciones y los documentos necesarios, para que aquí un fiscal inicie y tramite ante el tribunal local el procedimiento correspondiente. El *segundo* señalamiento de error no fue cometido.

El *tercero* —falta de legitimación de la parte demandante— es frívolo.

■ Olvida el señor Tenorio que según la Ley Uniforme

de Reciprocidad, la demanda puede ser instada por la persona a cargo del alimentista o por un funcionario o abogado de tal estado o territorio.

Originalmente fue el condado de Santa Clara, California, quien la presentó. Luego, en el recurso ante el Tribunal de Circuito de Apelaciones, compareció la madre del menor, señora Tosado, como representante del menor.[2]

El *cuarto* señalamiento no amerita elaboración. Se fundamenta en la hipótesis incorrecta de que el Tribunal de Circuito de Apelaciones eximió a la señora Tosado y al menor Marcos Francisco de someterse a unos exámenes de ADN ordenados por el tribunal de instancia.

En ningún momento el Tribunal de Circuito de Apelaciones los eximió. Lo que muy acertadamente dictaminó era que bajo una reclamación de alimentos al amparo de la *Ley Uniforme de Reciprocidad*, no procedía adjudicarse la paternidad; tampoco puede *impugnarse* en dicho procedimiento. Por esas razones, restableció la pensión alimentaria y aclaró que todo lo ordenado era sin *perjuicio* de que el señor Tenorio presentara un pleito de filiación y se adjudicara o no paternidad, utilizando los medios disponibles en ley.

Finalmente, con respecto al uso y a la procedencia de las pruebas científicas (ADN) en casos de filiación, basta consignar que en Puerto Rico existe una política pública a favor de que se reconozca, a todos los fines legales, la relación biológica entre padres e hijos. De ahí nuestro desarrollo jurisprudencial sobre la impugnación de paternidad encaminada a hacerla más flexible y abierta a los adelantos científicos y a corrientes constitucionales modernas en la zona de la filiación. *Rivera Pérez v. León*, 138 D.P.R. 839 (1995).

---

[2] La Regla 18 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que no se desestimará ningún pleito por indebida acumulación de partes; podrán añadirse o eliminarse por orden del Tribunal, a iniciativa de éste, o por solicitud de cualquiera de las partes, bajo las condiciones que sean justas.

*Se confirma el dictamen del Tribunal de Circuito de Apelaciones.*